**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

---

In re:

Roman Catholic Diocese of Burlington, Vermont,
Debtor.

Case Number: 24-10205 hzc

---

The Official Committee of Unsecured Creditors,
Plaintiff,

v.

Adversary Proceeding
No. 26-01005 hzc

Roman Catholic Diocese of Burlington, Vermont; Bishop John J. McDermott; Rice Memorial High School; Mount St. Joseph High School; Christ The King-St Anthony Parish, Burlington; St. Joseph Co-Cathedral, Burlington; St. Mark Parish, Burlington; St. Ambrose Church, Bristol; St. Mary Church, Cambridge; Our Lady of Mt. Carmel Church, Charlotte; Our Lady of Grace Parish, Colchester; St. Pius X Church, Essex Junction; Holy Family - St. Lawrence Parish, Essex Junction; St. Jude Church, Hinesburg; Holy Cross Parish, Colchester; St. Ann Parish, Milton; Our Lady of the Holy Rosary Parish, Richmond; St. Catherine of Siena, Shelburne; St. John Vianney Church, South Burlington; Our Lady of the Lake Parish, South Hero; St. Thomas Parish, Underhill Center; St. Peter Parish, Vergennes; Immaculate Heart of Mary Parish, Williston; St. Francis Xavier, Winooski; St. Charles Parish, Bellows Falls; Our Lady of the Valley Parish, Randolph; St. Michael Roman Catholic Church, Brattleboro; Holy Name of Mary Parish, Proctorsville c/o Ludlow; Our Lady of Mercy, Putney; Holy Family Parish, Springfield; St. Anthony's Parish, White River; Our Lady of Fatima, Wilmington; St. Francis of Assisi Parish, Windsor; Our Lady of the Snows, Woodstock; Christ Our Savior Parish, Manchester Center; St. John the Baptist Parish, North Bennington; St. Joachim Parish, Readsboro; Sacred Heart St. Francis de Sales, Bennington; St. Monica Parish, Barre; Our Lady of Perpetual Help, Bradford; St. Francis of Assisi, Norwich; Our Lady of Light, South Strafford; St. Eugene,

Wells River; Mary Queen of All Saints, Hardwick; St. Augustine Parish, Montpelier; The Most Holy Name of Jesus Parish, Morrisville; St. John the Evangelist Parish, Northfield; Blessed Sacrament Catholic Church, Stowe; Our Lady of the Snow and St. Patrick's Parish, Waitsfield & Moretown; St. Andrew Parish, Waterbury; Most Holy Trinity Parish, Barton; Mater Dei Parish, Derby Line; Corpus Christi Parish, St. Johnsbury; St. Andre Bessette Parish, Troy; St. Mary Parish Charitable Trust, Brandon; St. Bernadette and St. Genevieve Parish, Bridport c/o Middlebury; St. John the Baptist Parish, Castleton; Our Lady of Seven Dolars Parish, Fair Haven; Annunciation of the Blessed Virgin Mary, Ludlow; Assumption of the Blessed Virgin Mary (St. Mary's) Parish, Middlebury; St. Francis Cabrini Parish, West Pawlet; St. Paul Parish, Orwell c/o Castleton; St. Alphonsus, Pittsford; St. Raphael Parish, Poultney; St. Dominic Parish, Proctor Christ the King Church, Rutland; St. Peter, Rutland; St. Patrick Parish, Wallingford; St. Bridget Parish, West Rutland; St. Stanislaus Kostka Parish, West Rutland; St. John the Baptist, Enosburg; St. Luke, Fairfax; St. Patrick Parish, Fairfield, St. Isidore Parish, Montgomery c/o Richford; All Saints Parish, Richford; Our Lady of Lourdes Parish, East Berkshire; Immaculate Conception Parish, St. Albans; Ascension Parish, Georgia c/o Fairfax; St. Anthony Parish, Sheldon Springs; St. Mary's, Franklin; St. Anthony St. George Parish, Fairfield; Christ the King School, Burlington; St. Michael School, Brattleboro; Sacred Heart School, Bennington; St. Monica - St. Michael School, Barre; St. Paul's Catholic School, Barton; Christ the King School, Rutland; Good Shepherd Catholic School, St. Johnsbury; St. Therese Digital Academy, Burlington; Church of the Nativity - St. Louis Parish, Swanton; And DOES 1 through 20, being intended to name any other parishes whose true name and identity is not yet known,

Defendants.

**MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

NOW COME the defendants (except the Roman Catholic Diocese of Burlington, Vermont, Mount St. Joseph High School, and Rice Memorial High School), by and through their attorneys, Kaveh S. Shahi, Gfeller Laurie LLP, and pursuant to Bankruptcy Rule 7012(b), Fed. R. Civ. P. Rules 12(b)(1) and 12(b)(6) and Local Rules 9013-1 to -6, respectfully move to dismiss this Adversary

Proceeding. This motion is based on the following memorandum, notice of motion, request for judicial notice, and such other matter as may be properly considered by the Court.

## A. INTRODUCTION

On July 21, 2026, seven parishes filed a complaint in the district court for declaratory relief against six named defendants who are claimants in this bankruptcy action as well as Doe defendants representing the balance of the bankruptcy claimants whose identities are unknown to the parishes. ("Federal Declaratory Action" Doc. 1, 2:26-cv-00249-mkl).[1]

The Federal Declaratory Action alleges that the claimants named as defendants in the Federal Declaratory Action along with one Doe claimant had filed suit against these seven parishes and their respective trusts in state court in December 2025/January 2026 ("State Court Suits" brought by "State Court Plaintiffs"). Doc. 808-1, Ex C, pp.1-28.[2]

The State Court Suits sought recovery from the parishes for the alleged abuse and challenged the charitable trusts that hold the parish properties. Attached to the Federal Declaratory Action complaint are the rulings by the state courts on the parishes' motions to dismiss which were in part granted and in part denied. In those orders issued in May and July 2026, the state courts *sua sponte* stayed the State Court Suits. Doc. 808-1, Ex E, pp.47-57. The state courts expressed concern over potentially overlapping issues with the bankruptcy court as well as significant constitutional questions

[1]This Court is a unit of the district court and as such the court filings should be accessible and part of the record. If not, the moving defendants request judicial notice of the complaint and its exhibits as filed in the Federal Declaratory Action as well as other parts of the record referenced in this motion.

[2]The caption in the Federal DJ Action consists of the initials of the names of six individuals who are claimants in this bankruptcy and for that reason their initials are used here despite the fact that these individuals brought suit in state courts in their full names and thereby waived any confidentiality related to their identities.

that had

to be addressed before a merits determination. (Doc. 808-1, Ex E, pp.47-57; emphasis added).

In accord with the state court ruling, the Federal Declaratory Action was filed to not only determine the constitutionality of the State Court Suits but also the expected adversary proceeding which had not yet been filed.

On July 28, 2026, the Court granted the motion of the Unofficial Committee of Unsecured Creditors' (Creditor's Committee or plaintiff) to file an adversary action. (Doc. 843). On July 31, 2026, the Creditor's Committee filed this Adversary Action. (Doc. 849). It essentially raises the same allegations in the State Court Suits as to the status of the parishes and their properties.

On August 3, 2026, the summons was issued by the Court Clerk in this Adversary Action. (Doc. 2, No.26-01005).

On August 20, 2025, counsel for the defendants in the Federal Declaratory Action accepted service. (Docs. 4-10, 2:26-cv-00249-mkl).

On August 25, 2026, a motion to withdraw the referral for this Adversary Proceeding was filed in District Court pursuant to 28 U.S.C. §157(d). (Doc. 14-2, 2:26-cv-00249-mkl).

On September 1, 2026, the Court ruled that the Federal Declaratory Action violated the automatic stay because the parishes raised their First Amendment defenses in this district court. An appeal is taken as of the date of this filing.

## B. <u>ARGUMENT</u>

### 1. <u>The Creditors' Committee Has Not Alleged Sufficient Facts for Article III Standing</u>

The question of Article III standing in an adversary proceeding was addressed recently in this Circuit. *In re Goebel*, 184 F.4th 59 (2d Cir. 2026), involved an adversary complaint filed by a Chapter

7 debtor in 2022 against the Internal Revenue Service ("IRS") for declaratory relief that her income tax debt was subject to discharge. The IRS in 2023 filed a complaint in the district court where the bankruptcy case was pending and sought a determination otherwise. The IRS also moved to dismiss the adversary complaint for lack of subject matter jurisdiction arguing in part that it was not a justiciable dispute. The bankruptcy court denied the motion to dismiss and allowed the debtor to file a supplemental pleading. The district court certified the appeal directly to the Circuit because it involved a question of law without any controlling authority. On review, the Circuit reversed the bankruptcy court.

The Circuit outlined the basic standing requirement under Article III:

> "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes."[3] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* (citation modified) (quoting *Raines v. Byrd*, 521 U.S. 811, 819, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997)). "[T]o establish standing, a plaintiff must show (I) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.*; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

*Id.* at 66-67.

The Court addressed the element of actual or imminent injury:

> The "actual or imminent" aspect of the injury-in-fact requirement, while "concededly a somewhat elastic concept," serves "to ensure that the alleged injury is not too speculative for Article III purposes." Clapper, 568 U.S. at 409, 133 S.Ct. 1138 (quoting *Lujan*, 504 U.S. at 565 n.2, 112 S.Ct. 2130); *see also Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III."). Nonetheless, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.' "[4] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014) (citation modified and alterations accepted) (quoting *Clapper*, 568 U.S. at 414 & n.5, 133 S.Ct. 1138).

*Id.* 67.

The Court reasoned that the debtor's future exposure turned on the ability of the IRS to show that her unpaid taxes were nondischargeable. 11 U.S.C. §§523-524. Such a showing required proof of certain conduct and state of mind. Absent allegations to show there was a substantial risk that those elements could be met, the debtor only had a fear of future possibilities and that was not enough for the injury in fact requirement of Title III. *Id.* 68. The Court proceeded to reject the debtor's other arguments, *namely*, her action was authorized or justified by the Bankruptcy Code, bankruptcy was is an in rem proceeding, and contingent liability.

Applied here, the complaint does not allege sufficient facts against the moving parties to meet Article III standing. The allegations in counts one to three specifically allege and thereby admit that a justiciable controversy exists only between the Committee and the Diocese:

Count One:

> 86. An actual, substantial, and *justiciable controversy exists between the Committee and the Diocese* concerning the status of the Operating Divisions and whether these entities are unincorporated associations as the Diocese contends or, in fact, are merely unincorporated operating divisions of the Diocese that use diocesan property that is subject to the claims of the Diocese's creditors, including the Survivors.

Count Two:

> 92. An actual, substantial, and *justiciable controversy exists between the Committee and the Diocese* concerning the ownership of real and personal property allegedly held by the Operating Divisions as unincorporated associations or in trust for their benefit. The Committee contends that assets of the Diocese held for the alleged benefit of the Operating Divisions are, in fact, owned by the Diocese and are property of the estate.

Count Three:

> 100. An actual, substantial, and *justiciable controversy exists between the Committee and the Diocese* regarding the validity of the Parish Trusts, the effectiveness of any purported transfer of assets to those trusts, and whether those assets constitute property of the bankruptcy estate available to satisfy the claims of the Survivors.

(Doc. 849).

The Committee is the master of its pleadings and has chosen to limit the allegation of the existence of a justiciable controversy to the Diocese in counts one to three. There are no allegations that can support the standing requirements relative to these counts against the moving defendants.

The remaining counts four to six are directed to Bishop John McDermott who is sued in his capacity as the trustee of the parish trusts. (Doc. 849, ¶18). Counts four and five are for fraudulent transfer and refer to the enabling Bankruptcy Code §§ 544(b) and 550. These statutes rely on state law for the actual cause of action. *In re Jadeco Constr. Corp.*, 606 B.R. 169, 179 (Bankr. E.D.N.Y. 2019)("Under Section 544, the trustee steps 'into the shoes of a creditor under state law' to avoid any transfers that the creditor could have avoided. *Univ. Church v. Geltzer*, 463 F.3d 218, 222, n. 1 (2d Cir. 2006)."); *United States v. Miller*, 604 U.S. 518, 523, 145 S. Ct. 839, 847, 221 L. Ed. 2d 373 (2025) ("Although the term 'applicable law' can technically refer to any state or federal law outside of the Bankruptcy Code, trustees typically rely on state statutes to supply the 'applicable law' for avoidance suits under § 544(b).").

Under the state law alleged, 9 V.S.A. §§2285-2289, a claim for fraudulent conveyance looks at the conduct of a "debtor" which in turn is defined as "a person who is liable on a claim." 9 V.S.A. §2285(6). The allegations are therefore directed to the conduct of the Diocese. (Doc. 849, count 4, ¶103 ("[t]he Diocese made the Transfers with intent to hinder, delay or defraud the Diocese's creditors, . . . ."); count 5, ¶s110-111, transfers "[w]ere made by the Diocese without receiving a reasonably equivalent value in exchange . . . .")).

At the time of the transfers in 2006, the current Bishop McDermott "[w]as the Chancellor of the Diocese when the Parish Trusts were created." (Doc. 849, ¶s33-34). He was not the alleged debtor. His capacity as trustee of the parish trusts could not have pre-dated the formation of the trusts.

It readily follows that for the purposes of Article III, there can be no allegation that Bishop McDermott in his capacity as trustee caused injury to the claimants by the formation of the trusts and the transfer of property to them. Counts four and five therefore fail to meet the standing requirement against Bishop McDermott as trustee.

Finally, count six is for turnover of the assets held in the parish trusts, and is directed to the Diocese and Bishop McDermott in his trustee capacity. This count also fails the Article III test. It is basic law that "[t]he targeted asset does not become property of the debtor's estate until the trustee obtains a favorable judgment." *In re Jadeco Constr. Corp*., 606 B.R. 169, 179–80 (Bankr. E.D.N.Y. 2019) *citing Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 212 (2d Cir. 2014). "Once a transfer is avoided under Section 544, the remedy is set forth in Section 550, which provides that 'the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property' from the transferee. 11 U.S.C. § 550(a)." *Id.* at 180. "This comports with the view that '[a]voidance does not automatically lead to recovery.' (Citations including *In re Morgan,* 276 B.R. 785, 790 (Bankr.N.D.Ohio 2001) (indicating the "the concepts of 'avoidability' and 'recovery' are distinct concepts completely separate and independent from one another")." *In re S. Glens Falls Energy, LLC, No. 06-60073*, 2009 WL 2883141, at *3 (Bankr. N.D.N.Y. Jan. 30, 2009).

"It follows that this Court must first determine whether any of the transfers were fraudulent and, therefore, avoidable under Code § 548 or Code § 544(b) before they can be recovered by the Trustee pursuant to Code §550(a). *See In re Phillips,* 379 B.R. 765, 780 (Bankr.N.D.Ill.2007), citing *Mako,* 127 B.R. at 473." *Id.* at *4. To ask the Court for a turnover of assets of the parish trusts before a determination of fraudulent transfer is tantamount to seeking a remedy "[t]hat the Court is without authority to render [as] an advisory opinion on a *potential* controversy. *See Matter of FedPak Systems, Inc.,* 80 F.3d 207, 211–12 (7th Cir.1996) (indicating that "[a] bankruptcy court, like any other federal

court, lacks the constitutional power to render advisory opinions or to decide abstract, academic or hypothetical questions.”).” *In re S. Glens Falls Energy, LLC, No. 06-60073*, 2009 WL 2883141, at *4 (Bankr. N.D.N.Y. Jan. 30, 2009). *See Carney v. Adams*, 592 U.S. 53, 58, 141 S. Ct. 493, 498, 208 L. Ed. 2d 305 (2020)(“The Constitution grants Article III courts the power to decide ‘Cases’ or ‘Controversies.’” Art. III, § 2. We have long understood that constitutional phrase to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions.”); *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378–79, 144 S. Ct. 1540, 1554, 219 L. Ed. 2d 121 (2024).

As the above discussion shows, the complaint should be dismissed as to the moving defendants as there are insufficient allegations to meet the Article III standing requirement.

**2. <u>Under the First to File Rule, The Committee Should Not Be Allowed to File a Supplemental Complaint Under Bankruptcy Rule 7015 to Cure the Jurisdictional Shortcomings</u>**

*In re Goebel, supra,* addressed the debtor’s argument that the Article III jurisdictional shortcomings in the adversary complaint could be cured by filing a supplemental complaint. The Court acknowledged that it had yet to decide the question of whether jurisdictional defects can be cured by amended pleadings, but noted that it need not yet reach that question because “[t]he bankruptcy court abused its discretion in failing to dismiss Goebel's suit as duplicative of a preexisting, jurisdictionally proper suit.” *In re Goebel,* 184 F.4th at 72.

Applying the “first to file” rule, the IRS action was deemed filed as the first case because of the lack of subject matter jurisdiction of the adversary complaint as filed. The supplemental complaint, assuming it could have cured the jurisdictional shortcoming, was the second suit. As the Circuit put it, “[n]ormally ‘[s]ound judicial discretion dictates that the second court decline its consideration of the action before it until the prior action before the first court is terminated,’ and ‘a district court can

go beyond the allowable bounds of discretion when it refuses to stay or dismiss a duplicative suit[.]'" 184 F.4th at 72.

The Circuit also rejected the debtor's argument that the bankruptcy court has superior jurisdiction on discharge issues. The Court quoted from a Bankruptcy Appellate Panel as to the bankruptcy court's source of jurisdiction:

> The predicate for the referral power is the bedrock principle that the district courts have jurisdiction over bankruptcy cases and proceedings; the bankruptcy court's jurisdiction over such matters is purely and solely derivative of the district court's jurisdiction. And the bankruptcy court's power to hear, or to hear and determine, as the case may be, bankruptcy cases and proceedings is entirely dependent upon the referral by the district court. *Curtis*, 571 B.R. at 447.

*Id.* at 73-74. The Court concluded that the bankruptcy court had to defer to the district court as the source of its jurisdiction:

> So, there is nothing anomalous about the bankruptcy court deferring to the district court that first obtained jurisdiction over the case because the bankruptcy court depends on that district court for its jurisdiction in the first place.

*Id.* at 74.

Applied here, the Federal Declaratory Action was filed first, and the district court has jurisdiction over not only the named defendants but the remaining claimants in the bankruptcy court. The automatic stay in *In re Goebel* was not extended to IRS's declaratory action filed in the district court much the same way as the Federal Declaratory Action. The impact of the stay order in this case will have to be evaluated through the appeal process.

### 3. <u>Without Consent, the Bankruptcy Court Lacks Jurisdiction to Adjudicate the Constitutional Defenses</u>

The moving defendants do not consent to the bankruptcy court to adjudicate their constitutional defenses to the adversary complaint and do not consent to entry of final judgment. Bankruptcy courts are not Article III and therefore absent consent, the parishes cannot be compelled to litigate their

constitutional rights in bankruptcy court. *Wellness International Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S.Ct.1932 (2015). The impact of the stay the Federal Declaratory Action, is to coerce the parishes to waive their constitutional right to an Article III court. The Government, whether the executive or judiciary, cannot coerce the waiver of constitutional rights. *Schneckloth v. Bustamonte*, 412 U.S. 218, 228, 93 S. Ct. 2041, 2048, 36 L. Ed. 2d 854 (1973). This adversary complaint cannot move forward until the question of the moving defendants' right to an Article III court for the adjudication of the constitutional issues has been finally decided.

**4. <u>Count Five Was Extinguished under 9 V.S.A. §2293(2) as Fraudulent Conveyance Claims under Section 2288(a)(2) or 2289, Do Not Have Additional Time to Discover the Claim</u>**

9 V.S.A. §2293 provides in relevant part:

> A claim for relief with respect to a transfer or obligation under this chapter is extinguished unless action is brought:
>
> (1) under subdivision 2288(a)(1) of this title, not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
> (2) under subdivision 2288(a)(2) or subsection 2289(a) of this title, not later than four years after the transfer was made or the obligation was incurred;

The Legislature included a discovery provision in section 2293(1) for actions brought under section 2288(a)(1) but there is no such discovery period in section 2293(2) for actions brought under sections 2288(a)(2) or 2289(a). A section 2288(a)(2) or 2289 action is extinguished four years after the transfer. Count five is such an action as it alleges:

> 110. The Transfers, including Additional Transfers, were fraudulent as to present or future creditors pursuant to 9 V.S.A. sections 2288(a)(2)(A) and 2289 because the Transfers and Additional Transfers were made by the Diocese without receiving a reasonably equivalent value in exchange therefor when the Diocese was engaged or about to engage in a business transaction for which the remaining assets of the Diocese were unreasonably small in relation to the

> business transaction.
>
> 111. Alternatively, the Transfers and Additional Transfers were fraudulent as to present or future creditors pursuant to 9 V.S.A. sections 2288(a)(2)(B) and 2289 because the Transfers were made by the Diocese without receiving a reasonably equivalent value in exchange therefor when the Diocese intended to incur, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

Count five should be therefore dismissed as the complaint alleges the transfers were made in 2006, and therefore the claims were extinguished four years later.

### 5. <u>Count Four Was Extinguished under 9 V.S.A. §2293(1)</u>

Section 2293(1) extinguishes an action for fraudulent transfer under section 2288(a)(1) at the later date of four years after the transfer or a year after the transfer was or could reasonably have been discovered by the claimant. In *Goldberg v. Saint-Sauveur Valley Resorts, Inc.*, No. 2:17-CV-00061, 2018 WL 8370060, at *11 (D. Vt. Dec. 20, 2018), the discovery provision of section 2293(1) was construed under Vermont law's inquiry notice, citing *Jadallah v. Town of Fairfax*, 2018 VT 34, ¶ 17, 186 A.3d 1111, 1117-18. In *Jadallah,* the Vermont Supreme Court applied inquiry notice as a matter of law to dispose of a number of tort claims under the six year statute of limitations. The Court explained that the discovery period is triggered when a reasonable person chargeable with notice of all facts that could have been obtained by exercise of reasonable diligence, was put on inquiry:

> A cause of action accrues "upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery." *Agency of Nat. Res. v. Towns*, 168 Vt. 449, 452, 724 A.2d 1022, 1024 (1998) (emphasis omitted) (quotation omitted). "Thus, the statute of limitation begins to run when the plaintiff has notice of information that would put a reasonable person on inquiry, and the plaintiff is ultimately 'chargeable with notice of all the facts that could have been obtained by the exercise of reasonable diligence in prosecuting [the] inquiry.' " *Id. (quoting Lamoille Cty. Sav. Bank & Trust Co. v. Belden*, 90 Vt. 535, 541, 98 A. 1002, 1005 (1916) ) (alteration in original). Thus, notice can be evidenced by showing a plaintiff had either actual knowledge or inquiry notice of the cause of action.

2018 VT 34, ¶ 17.

Here, the complaint alleges that "[e]ach survivor in this case holds an unsecured claim that arose prior to the date of the Transfers and Additional Transfers that is allowable under Bankruptcy Code section 502." (Doc. 849, ¶62). The complaint further alleges that at least one or more of the claimants did not know of the transfers "[o]n the date of the transaction" and could not have reasonably discovered them because they moved out of state, no longer attended church or received local news or church announcements, and simply did not have access to the Diocese's financial information." *Id.* ¶63. However, "[s]ome Survivors knew about the Transfers, [but] they could not pursue fraudulent transfers as creditors of the Diocese until after July 1, 2019 because Vermont had not passed legislation ('Windows Legislation') to allow lawsuits for sexual abuse claims that were previously time-barred." *Id.* ¶64.

None of these allegations are sufficient to defeat inquiry notice. *Jadallah* held as a matter of law that inquiry notice was triggered despite plaintiff's claim that although he was aware that a certain deed had been recorded, he did not know it was fraudulent:

> Even if this Court agrees that appellant did not have actual knowledge, we still conclude that appellant was on inquiry notice of the cause of action. When determining inquiry notice, the question is what a reasonable person would have done when presented with the information. *See Abajian v. TruexCullins, Inc.*, 2017 VT 74, ¶ 19, —— Vt. ——, 176 A.3d 524 ("[T]he question here is not when plaintiffs discovered the true nature of the [cause of action], but when sufficient facts existed that would have led a reasonable person to begin the investigation that would lead to the discovery."). We can confidently say that a reasonable person would have at least sought clarification upon hearing that a deed had been recorded which allegedly transferred title out of his or her name into someone else's, as appellant was told in April 2008. Further, appellant was also placed on inquiry notice in April 2008 when informed by the mortgagee of the property that an unauthorized transfer of the property had occurred and again in May 2008 when his bankruptcy attorney conducted a title search in relation to his bankruptcy proceedings and discovered the conveyance. Therefore, we hold that appellant was on inquiry notice of the cause of action—that a deed, fraudulent or not, was recorded—at the earliest in April 2008 and at the latest May 2008 and thus the statute of limitations expired in May 2014—at least four months

before appellant filed his complaint.

*Jadallah v. Town of Fairfax*, 2018 VT 34, ¶18.

According to the allegation in paragraph 64 of the complaint, the survivors who admittedly knew of the transfers waited until after July 1, 2019, when Vermont enacted the childhood sexual or physical abuse statute of limitation. 12 V.S.A. §522. Even so, their fraudulent transfer claim under section 2293(1) was extinguished by July 1, 2020. This is not to agree that the alleged excuse defeats inquiry notice. As the Vermont Supreme Court explained in a clergy abuse case published in 2009, the application of the predecessor of section 522 was complex and often required the jury to determine when the accrual of the statute. *Turner v. Roman Cath. Diocese of Burlington, Vermont*, 2009 VT 101, ¶ 44, 186 Vt. 396, 421, 987 A.2d 960, 978 (2009). It is simply not a correct legal statement in paragraph 64 that before 2019, sexual abuse claims were as a matter of course barred by the statute of limitations. Inquiry notice demands much more than a subjective assumption by a particular plaintiff about the applicable law.

As for the survivors who allegedly moved from Vermont or otherwise cut ties with the Church, it is commonly accepted that in 2002 the Boston Globe's reporting on clergy abuse became national news. The reporting led to the U.S. Conference of Catholic Bishops commissioning the John Jay College of Criminal Justice to conduct a comprehensive study, The Nature and Scope of Sexual Abuse of Minors by Catholic Priests and Deacons in the United States 1950–2002, which was released in 2004.[3] The transfers in question were challenged as fraudulent conveyance as a matter of public record in complaints filed in state court shortly after the trusts were created. *See e.g. Borden v. Roman*

---

[3]John Jay College of Criminal Justice, The Nature and Scope of Sexual Abuse of Minors by Catholic Priests and Deacons in the United States 1950–2002 (Washington, D.C.: USCCB, 2004), http://www.bishop-accountability.org/reports/2004_02_27_JohnJay/.

*Catholic Diocese of Burlington, et al,* Docket No. S1527-09 CnC, filed November 23, 2009, copy of complaint attached per request for judicial notice. For inquiry notice, there was no need to access the financial records of the Diocese or attend church. On November 17, 2019, VT Digger published a "story" about the transfers.[4] It readily follows that at the latest by November 17, 2020, the cause of action for a section 2288(a)(1) claim as alleged in count four was extinguished. (Doc. 849, ¶103).

## C. <u>CONCLUSION</u>

The Complaint should be dismissed for the reasons outlined above.

Dated this 2nd day of September, 2026.

Respectfully Submitted,
GFELLER LAURIE LLP

By: */s/ Kaveh S. Shahi*
Kaveh S. Shahi, Esq.
110 Merchants Row, Ste. 3
Rutland, VT 05701
(802) 775-8800
kshahi@gllawgroup
*Attorneys for the moving parties (all defendants except the Diocese, Mount St. Joseph High School, and Rice Memorial High School)*

[4] https://vtdigger.org/2019/11/17/how-vermonts-catholic-church-stashed-away-a-half-billion-dollars-in-assets/