**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

| | |
|---|---|
| In re:<br>ROMAN CATHOLIC DIOCESE OF BURLINGTON, VERMONT,<br>Debtor. | Chapter 11<br>Case No. 24-10205-HZC |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br>Plaintiff,<br>v.<br>ROMAN CATHOLIC DIOCESE OF BURLINGTON, VERMONT; THE PARISHES, SCHOOLS, AND HIGH SCHOOLS IDENTIFIED IN THE COMPLAINT; and BISHOP JOHN J. McDERMOTT, solely in his capacity as trustee of the Parish Trusts,<br>Defendants. | Adversary Proceeding<br>No. 26-01005 |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OMNIBUS OPPOSITION TO (I) THE PARISH DEFENDANTS' MOTION TO DISMISS [DOC. 13] AND (II) THE DIOCESE'S MOTION TO DISMISS COMPLAINT [DOC. 11]**

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

A. The Diocese, Its Operating Divisions, and the 2006 Transfers ........ 3

B. The Bankruptcy Case and This Adversary Proceeding ........ 4

III. LEGAL STANDARD ........ 5

IV. THE PARISH DEFENDANTS' MOTION SHOULD BE DENIED ........ 6

A. The Committee Has Article III Standing to Prosecute Each Count ........ 6

B. The "First-to-File" Rule Does Not Apply, Much Less Compel Dismissal ........ 10

C. Withholding Consent to Entry of Final Judgment Is Not a Ground for Dismissal ........ 11

D. The Complaint Does Not Show on Its Face That Counts 4 and 5 Are Extinguished ........ 12

V. THE DIOCESE'S MOTION SHOULD BE DENIED ........ 14

A. The Diocese Is a Proper—Indeed Necessary—Party to the Declaratory Relief Claims ........ 14

B. The Diocese Is a Proper Turnover Defendant Under Section 542(a) ........ 16

VI. CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**Cases**


*48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427 (2d Cir. 1987) ..... 10

*Albers v. Church of the Nazarene*, 698 F.2d 852 (7th Cir. 1983) ..... 2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..... 5, 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..... 6

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ..... 6, 13

*Comm. of Tort Litigants v. Cath. Diocese of Spokane,* 2006 WL 211792 (E.D. Wash. Jan. 24, 2006). ..... 7, 12, 15

*Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014) ..... 11

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999) ..... 6, 12

*In re Goebel*, 184 F.4th 59 (2d Cir. 2026) ..... 8

*In re Housecraft Indus. USA, Inc.*, 310 F.3d 64 (2d Cir. 2002) ..... 6, 15

*In re Jadeco Constr. Corp.*, 606 B.R. 169 (Bankr. E.D.N.Y. 2019) ..... 9

*In re Roman Catholic Bishop of Great Falls*, 584 B.R. 335 (Bankr. D. Mont. 2018) ..... 15

*In re S. Glens Falls Energy, LLC*, 2009 WL 2883141 (Bankr. N.D.N.Y. Jan. 30, 2009) ..... 9

*Jadallah v. Town of Fairfax*, 207 Vt. 413 (2018) ..... 14

*Jones v. Wolf*, 443 U.S. 595 (1979) ..... 12

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015) ..... 6, 8

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ..... 7

*Muskrat v. United States*,
219 U.S. 346 (1911) ........ 15

*Off. Comm. of Unsecured Creditors v. Archbishop of Agana*,
2022 WL 3093715 (Bankr. D. Guam Mar. 17, 2022) ........ 2

*Stern v. Marshall*,
564 U.S. 462 (2011) ........ 12

*Tort Claimants Comm. v. Roman Catholic Archbishop (In re Roman Catholic Archbishop of Portland in Or.)*,
335 B.R. 842 (Bankr. D. Or. 2005) ........ 2, 12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 6

*Turner v. Roman Catholic Diocese of Burlington*,
186 Vt. 396 (2009) ........ 13

*Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.)*,
779 F.2d 901 (2d Cir. 1985) ........ 6, 15

*Wellness Int'l Network, Ltd. v. Sharif*,
575 U.S. 665 (2015) ........ 11, 12

**Statutes**

11 U.S.C. § 541 ........ 9, 17

11 U.S.C. § 542 ........ 9, 11, 16

11 U.S.C. § 544(b) ........ 9, 11, 12

11 U.S.C. § 546(a) ........ 12

11 U.S.C. § 550 ........ 8, 9, 11

28 U.S.C. § 151 ........ 11

28 U.S.C. § 157 ........ 11, 12

28 U.S.C. § 2201 ........ 8, 16

9 V.S.A. § 2293 ........ 12, 13

11 V.S.A. § 1621 ........ 3

14A V.S.A. § 505 ........ 9, 17

**Rules**

Fed. R. Bankr. P. 7008 ........ 9

Fed. R. Bankr. P. 7012 ........ 5

Fed. R. Civ. P. 8 ........ 9, 17

Fed. R. Civ. P. 12 ........ *passim*

The Official Committee of Unsecured Creditors (the "Committee") of the Roman Catholic Diocese of Burlington, Vermont (the "Diocese" or "Debtor") submits this omnibus opposition to two motions to dismiss the Committee's adversary complaint filed by (i) the Parish Defendants [Doc. 13] and (ii) the Diocese [Doc. 11].[1]

## I. INTRODUCTION

1. The Complaint presents a question at the core of this chapter 11 case: what is property of the Diocese's bankruptcy estate? The Diocese contends that its parishes and schools are legally separate "unincorporated associations" and that real and personal property worth hundreds of millions of dollars are held in individual "Parish Trusts" beyond the reach of the Diocese's creditors, principally the survivors of childhood sexual abuse. The Committee will prove that the Parish Defendants are, and have always been, operating divisions of the Diocese; that the Parish Trusts are self-settled trusts whose assets remain subject to the claims of the Diocese's creditors; and, in the alternative, that the Diocese's 2006 transfer of substantially all of its real property and investment assets into the Parish Trusts is avoidable as an intentionally and constructively fraudulent transfer. (Compl. ¶¶ 2–3, 33–34, 51.)

2. The consequence of a finding that the Parish Defendants are operating divisions is straightforward. As the Seventh Circuit explained:

> If you are injured because of a defect in a Chevrolet, you may sue General Motors and the dealer and individual employees of either but you may not sue the Chevrolet Division of General Motors or the dealer's maintenance department. The reason is practical. ***An***

[1] Unless otherwise defined, capitalized terms have the meanings set forth in the Complaint for Declaratory Relief, Avoidance of Fraudulent Transfers, and Turnover [Doc. 1] (the "Complaint" or "Compl."). The "Parish Motion" refers to the Motion to Dismiss and Supporting Memorandum of Law [Doc. 13] filed on behalf of all defendants other than the Diocese, Mount St. Joseph Academy, and Rice Memorial High School (the "Parish Defendants"). The "Diocese Motion" refers to the Diocese's Motion to Dismiss Complaint [Doc. 11].

> ***unincorporated division has no separate assets; all its assets are owned by the organization of which it is a part.***

*Albers v. Church of the Nazarene*, 698 F.2d 852, 857 (7th Cir. 1983) (emphasis added). Bankruptcy courts have resolved this precise question against dioceses on comparable facts. *See Tort Claimants Comm. v. Roman Catholic Archbishop (In re Roman Catholic Archbishop of Portland in Or.)*, 335 B.R. 842, 865–67 (Bankr. D. Or. 2005) (unincorporated parishes "are not separate from, but are merely a part of debtor"); *Off. Comm. of Unsecured Creditors v. Archbishop of Agana*, 2022 WL 3093715, at *1 (Bankr. D. Guam Mar. 17, 2022) (parishes and schools "are part of Debtor-Defendant and are unincorporated divisions of the Archdiocese").

3. This Court has already determined that these claims warrant prosecution: it entered the Standing Order on July 28, 2026, and the Committee filed the Complaint three days later, asserting two categories of claims—(i) declaratory relief that the Operating Divisions are part of the Diocese, that their assets are property of the estate, and that the Parish Trusts are self-settled trusts subject to creditor claims (Counts 1–3); and (ii) in the alternative, avoidance and recovery of the Transfers and Additional Transfers as fraudulent, and turnover (Counts 4–6).

4. Neither motion engages the Complaint's detailed factual allegations, which must be accepted as true. Instead, the Parish Defendants advance a series of threshold theories—Article III standing, a "first-to-file" rule, non-consent to final adjudication, and statutory extinguishment—none of which are sufficient to warrant dismissal, especially at the pleading stage. The Diocese, for its part, does not contend that the Complaint fails to state a claim at all; it asks only to be excused from the case while promising to "be bound" by the outcome. The Diocese holds legal title to disputed assets and has affirmatively litigated the very characterizations of the estate that the Committee challenges in pursuit of declaratory relief. The Diocese is not a disinterested

bystander. Both motions should be denied in their entirety and the defendants should be directed to answer.

## II. BACKGROUND

### A. The Diocese, Its Operating Divisions, and the 2006 Transfers.

5. The Diocese was incorporated as a corporation sole in 1896 and is reflected in public records as a religious nonprofit corporation. (Compl. ¶ 21.) The Parish Defendants are not incorporated; they are not even registered with the Vermont Secretary of State as unincorporated associations under 11 V.S.A. § 1621. (*Id.* ¶¶ 22–24.) The Diocese identifies the Operating Divisions to insurers and the federal government as "part of" the Diocese. (*Id.* ¶¶ 28–29.)

6. Before 2006, all of the real and personal property associated with the Operating Divisions was owned by, and titled in the name of, the Diocese. (Compl. ¶ 32.) In 2006, the Diocese created 128 individual Parish Trusts and transferred to them real property and investment assets valued in the aggregate at hundreds of millions of dollars, for recited consideration of one dollar. (*Id.* ¶¶ 33, 35, 51, 55, 105(f).) The Diocese's April 2006 property insurance schedule ascribed a "total replacement cost" of $405 million to the Parish properties alone. (*Id.* ¶ 51.) Bishop McDermott—then the Chancellor—has testified that the Parish Trusts were created due to "concern over parish properties being at risk in light of pending lawsuits" and, in part, to protect "those parish properties from the lawsuits." (*Id.* ¶ 34.)

7. The trust instruments confirm what the testimony admits. Each Declaration of Trust states that the trust is operated "exclusively for the benefit of . . . the Roman Catholic Church (as operated through the Catholic Diocese of Burlington, Vermont)," while providing that "[n]othing herein shall be construed as granting the Parish specific rights to assets of this trust" and that parishioners are not beneficiaries. (Compl. ¶¶ 38–40.) The Bishop is the sole trustee of every Parish

Trust, with power to manage, amend, and even terminate each trust, and no Parish signed any Declaration of Trust or Deed Into Trust in any capacity. (*Id.* ¶¶ 41–50, 58.) The Diocese did not obtain fairness opinions or a solvency analysis. (*Id.* ¶ 59.) And the transfers did not stop in 2006: within four years of the Petition Date, and as recently as January 2024, the Diocese continued to transfer assets to the Parish Trusts for little or no consideration; in 2020, the then-Bishop asked a candidate for Chief Financial Officer whether she would be willing to help the Diocese shelter assets from survivors in preparation for a bankruptcy filing. (*Id.* ¶ 52.)

8. The Complaint describes in detail the Diocese's pervasive control of the Operating Divisions: pastors are appointed, supervised, and removable only by the Bishop; the Parish Finance Committee and Pastoral Council are purely consultative; and the Diocese's Parish Finance & Administrative Manual and human resource policies dictate, among many other things, the Parish Defendants' accounting, payroll, personnel, investment, fundraising, capital-project, and cash-management practices—down to a requirement that each parish transfer its "excess" cash to a Diocesan pooled fund. (Compl. ¶¶ 65–76.)

**<u>B. The Bankruptcy Case and This Adversary Proceeding.</u>**

9. The Diocese filed its chapter 11 petition on September 30, 2024. (Compl. ¶¶ 19–20.) The United States Trustee appointed the Committee, comprised of five survivors, on October 22, 2024. (*Id.* ¶ 12.) The Diocese has not listed any of the Operating Divisions' assets on its Schedules or Statement of Financial Affairs, does not report their activities in its monthly operating reports, and asserts that property titled in its own name is held "in trust" for the Operating Divisions. (*Id.* ¶¶ 30–31.)

10. In December 2025 and January 2026, six Survivor-claimants filed lawsuits (the "State Court Suits") against seven parishes and their respective trusts. (Parish Mot. at 3.) In May and July

2026, the state courts ruled in part on the parishes' motions to dismiss and *sua sponte* stayed the State Court Suits, citing potentially overlapping issues with this bankruptcy case. (*Id.*)

11. On July 21, 2026, eleven days after the Committee moved for derivative standing to pursue the Complaint, the seven parishes responded by filing the Federal Declaratory Action in the district court against the six claimants and Doe defendants, seeking rulings on their alleged constitutional defenses. (*Id.*; No. 2:26-cv-00249-mkl.)

12. On July 28, 2026, this Court entered the Standing Order granting the Committee leave, standing, and authority to prosecute these causes of action on behalf of the Debtor and its estate. [Main Case, Doc. 844.] The Committee commenced this adversary proceeding on July 31, 2026. (Compl., Doc. 1.)

13. On August 25, 2026, the Parish Defendants moved in the district court to withdraw the reference of this adversary proceeding. (Parish Mot. at 4.) On September 1, 2026, this Court ruled that the Federal Declaratory Action was filed in violation of the automatic stay; the parishes immediately noticed an appeal. (*Id.*) The next day, the Parish Defendants and the Diocese each filed motions to dismiss now before the Court.

## III. LEGAL STANDARD

14. On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable by Bankruptcy Rule 7012(b), the court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678. Review is limited to the complaint, documents attached to or incorporated in it, and matters properly subject to judicial notice.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). And if the Court concludes that any claim is deficiently pleaded, leave to amend should be freely granted. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

## IV. THE PARISH DEFENDANTS' MOTION SHOULD BE DENIED

### A. The Committee Has Article III Standing to Prosecute Each Count.

15. To establish Article III standing, a plaintiff must show a concrete, particularized, and actual or imminent injury, fairly traceable to the defendant, and likely to be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The Committee prosecutes these claims on behalf of the Debtor's estate pursuant to the Standing Order, a mechanism long recognized in this Circuit. *See Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.)*, 779 F.2d 901, 904 (2d Cir. 1985); *In re Housecraft Indus. USA, Inc.*, 310 F.3d 64, 70–71 (2d Cir. 2002). The injury is neither speculative nor future: the Committee alleges that property of the estate is presently unscheduled, withheld from administration, and wrongfully claimed by the Parish Defendants as their own. A declaration of the estate's rights, avoidance of the Transfers, and turnover will directly redress the injury.

16. *Counts 1 through 3.* An "actual controversy" exists whenever "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Here, the Diocese asserts in its First Day Declaration, schedules, and motions that the Parish Defendants and High Schools are separate unincorporated associations and that assets titled in the Diocese's name are held "in trust" for them (Compl. ¶¶ 23–24, 30–31, 77, 83); the Parish Defendants claim ownership of, or beneficial interests in, the same assets. The dispute over the scope of the estate must be

resolved *now*: it controls the Debtor's disclosure obligations, the use and sale of property, the best-interests test, plan formulation and voting, and the scope of any discharge. (Compl. ¶ 91.) As the district court explained in affirming the denial of motions to dismiss a committee's materially identical declaratory action in a diocesan bankruptcy, "in a Chapter 11 reorganization case, it is essential that the creditors and the Bankruptcy Court know what the assets of the estate are in order to vote and rule upon a Chapter 11 confirmation plan." *Comm. of Tort Litigants v. Cath. Diocese of Spokane,* 2006 WL 211792, at *5 (E.D. Wash. Jan. 24, 2006).

17. The Parish Defendants' principal argument is that paragraphs 86, 92, and 100 of the Complaint allege a justiciable controversy "only" between the Committee and the Diocese. That reading isolates three paragraphs from a pleading that must be read as a whole and in the light most favorable to the Committee. Each of Counts 1 through 3 is expressly pleaded "Against All Defendants." Further, each count incorporates every preceding factual allegation, including allegations supporting declaratory relief against the Parish Defendants themselves. For example, the Parish Defendants claim to exist separately, to benefit from the Parish Trusts, and to hold the assets at issue (Compl. ¶¶ 65–77), which the Committee disputes (Compl. ¶¶ 84-101). The prayer for relief seeks declarations that necessarily adjudicate the Parish Defendants' asserted interests.

18. The Declaratory Judgment Act authorizes a declaration of "the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a). Paragraphs 86, 92, and 100 name the Diocese because the Diocese is the party that has pressed the adverse characterization in this Court. Those Paragraphs do not, and could not, erase the adversity between the Committee and Parish Defendants who claim estate assets as their property.

19. *In re Goebel*, 184 F.4th 59 (2d Cir. 2026), on which the Parish Defendants rely, is not to the contrary even as they describe it. There, a chapter 7 debtor sought an advance ruling that

her tax debt *would be* dischargeable, where the IRS's future ability to prove the conduct and state-of-mind elements of nondischargeability under Bankruptcy Code section 523(a)(1)(C) was speculative. *Id.* at 67-68. As the Parish Defendants recognize, "the debtor only had a fear of future possibilities and that was not enough for the injury in fact requirement." (Parish Mot. at 6.) Nothing here is contingent on future events. The Diocese is in bankruptcy today; its schedules omit the Operating Divisions' assets today; the defendants assert ownership today; and the estate cannot be administered, nor a plan formulated, without resolving whose property this is. Here, the injury to Survivors is not threatened but ongoing.

20. *Counts 4 and 5.* The Parish Defendants argue that Bishop McDermott cannot have "caused" the Survivors' injury because he was not the Diocese's debtor-representative when the Parish Trusts were created in 2006. The argument confuses the merits elements of a fraudulent transfer claim with Article III. Avoidance claims are properly asserted against the *transferee*: Bankruptcy Code section 550(a)(1) authorizes recovery "from the initial transferee of such transfer or the entity for whose benefit such transfer was made." The Complaint alleges that each Parish Trust is the initial transferee (Compl. ¶¶ 104, 112) and names the Bishop *solely in his capacity as trustee* of those trusts (*id.* ¶ 18), which is how one sues a trust. The Parish Defendants' own authorities confirm the structure (Parish Mot. at 8): under section 544(b) the estate representative "steps into the shoes of a creditor under state law to avoid any transfers that the creditor could have avoided," *In re Jadeco Constr. Corp.*, 606 B.R. 169, 179 (Bankr. E.D.N.Y. 2019) (quotation omitted), and recovery then runs against the transferee under section 550. The injury (depletion of the pool of assets available to the estate and its creditors) is traceable to the Transfers, and it is redressable by a judgment avoiding the Transfers and recovering the property from the trustee who holds it. That is all Article III requires.

21. *Count 6.* Nor is the turnover count a request for an "advisory opinion." The Federal Rules expressly permit a party to plead alternative claims and to demand relief in the alternative. Fed. R. Civ. P. 8(a)(3), 8(d)(2)–(3); Fed. R. Bankr. P. 7008. If the Committee prevails on Counts 1 through 3, the assets associated with the Operating Divisions and held in the Parish Trusts are *already* property of the estate under section 541 and Vermont's self-settled trust statute, 14A V.S.A. § 505, and turnover under section 542(a) is available without any avoidance predicate at all. If instead the avoidance counts supply the predicate, pleading avoidance, recovery under section 550, and turnover in a single adversary proceeding is routine; the court simply adjudicates the claims in the proper sequence and enters relief accordingly. The authorities the Parish Defendants cite, if relevant at all, stand only for the unremarkable proposition that recovery follows avoidance. This is a matter of the order of adjudication, not of jurisdiction to hear a well-pleaded complaint. *See, e.g., In re S. Glens Falls Energy,* 2009 WL 2883141, at *3 (Bankr. N.D.N.Y. Jan. 30, 2009) (Parish Mot. at 8, denying a motion for summary judgment under § 550 prior to adjudication of avoidance claims from the same complaint).

**B. The "First-to-File" Rule Does Not Apply, Much Less Compel Dismissal.**

22. The Parish Defendants next contend that this adversary proceeding must yield to the lawsuit filed in the district court on July 21, 2026 by seven parishes against six individual Survivor-claimants. The first-filed doctrine has no application here, for at least three independent reasons.

23. *First*, as the Parish Defendants acknowledge, on September 1, 2026 this Court ruled that the Federal Declaratory Action was filed and prosecuted in violation of the automatic stay. (Parish Mot. at 4.) In this Circuit, actions taken in violation of the automatic stay are void. *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir. 1987). A void proceeding cannot serve as the "first-filed" suit. Indeed, on the Parish

Defendants' own account, the first-filed analysis turns on which suit was "jurisdictionally proper." (Parish Mot. at 9.) Here it is the parishes' district court action—not the Committee's court-authorized adversary proceeding—that suffers the disabling defect.[2]

24. *Second*, the doctrine provides an exception when the first filed action is a declaratory judgment action in anticipation of litigation. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 219 (2d Cir. 1978), *abrogated on other grounds by Pirone v. MacMillan, Inc.,* 894 F.2d 579, 586 (2d Cir. 1990) ("As Mr. Justice Brennan has observed, '[t]he federal declaratory judgment is not a prize to the winner of a race to the courthouses.'") (quoting *Perez v. Ledesma*, 401 U.S. 82, 119 n. 12 (1971) (Brennan, J. dissenting). In *Factors Etc., Inc.,* 579 F. 2d at 219, certain parties disputed marketing rights to the Elvis Presley estate and brought separate lawsuits in Ohio and New York. The Second Circuit concluded that there was no abuse of discretion in allowing the later-filed New York action to proceed because additional lawsuits against other defendants presented the same issues for resolution and because the Ohio declaratory relief action was filed in anticipation of the New York lawsuit following a notice letter. *Id.*

25. In this case, there is no identity of parties or claims between the void Federal Declaratory Action and this adversary proceeding. A subset of parishes filed the Federal Declaratory Action against a subset of Survivors *after* the Committee moved for derivative standing and attached a copy of the proposed Complaint to its motion. Because the Federal Declaratory Action seeks preemptive declaratory relief in response to the Committee's claims, the Court should reject the Parish Defendants' first-filed argument.

---

[2] The Parish Defendants note that an appeal has been taken from the Court's September 1, 2026 order. (Parish Mot. at 4.) Unless and until that order is stayed or reversed, it remains the controlling determination of this Court, and the Parish Defendants identify no authority permitting a party to build a dismissal argument on an order it hopes to overturn.

26. *Third*, there is no comity problem for the first-filed rule to solve. The rule mediates between coordinate courts. This Court is a unit of the very district court in which the Federal Declaratory Action was filed, 28 U.S.C. § 151, exercising jurisdiction referred by the district court, 28 U.S.C. § 157(a). If the Parish Defendants believe the district court should hear these claims directly, their pending motion to withdraw the reference under 28 U.S.C. § 157(d) is the proper vehicle,[3] not dismissal of the estate's claims under Rule 12. Moreover, equitable considerations cut against the Parish Defendants: this adversary proceeding is a core proceeding at the center of the reorganization, 28 U.S.C. § 157(b)(2), while the Federal Declaratory Action was filed, after the Committee filed its motion for standing and after the state courts denied the parishes' motions to dismiss and *sua sponte* stayed the State Court Suits based on numerous overlapping bankruptcy issues.

**C. Withholding Consent to Entry of Final Judgment Is Not a Ground for Dismissal.**

27. The Parish Defendants declare that they do not consent to this Court's entry of final judgment on their constitutional defenses. That declaration affects, at most, the *forum* of the ultimate disposition, but not this Court's authority to preside over pretrial proceedings and certainly not the sufficiency of the Complaint. In *Executive Benefits*, the Court confirmed the remedy for so-called *Stern* claims for which final bankruptcy court adjudication is unavailable: the bankruptcy court hears the matter and submits proposed findings of fact and conclusions of law to the district court for *de novo* review. *Executive Benefits Insurance Agency v. Arkison*, 573 U.S. 25, 34–36 (2014). Nothing in *Stern v. Marshall*, 564 U.S. 462 (2011), *Wellness Int'l Network, Ltd. v.*

[3] *See* Motion to Withdraw the Reference, Doc. 14-2, No. 2:26-cv-00249-mkl (D. Vt. Aug. 25, 2026), cited at Parish Mot. at 4.

*Sharif,* 575 U.S. 665 (2015), or section 157 makes non-consent to bankruptcy court jurisdiciton a basis for Rule 12 dismissal.

28. In any event, Counts 1 through 3 seek a determination of what constitutes property of the estate, which is a matter concerning the administration of the estate and the paradigmatic function of a bankruptcy court. 28 U.S.C. § 157(b)(2)(A), (O); *see Spokane*, 2006 WL 211792, at *5. Nor does the invocation of the First Amendment change the forum analysis: courts, including bankruptcy courts, resolve property disputes involving religious organizations by applying "neutral principles of law." *Jones v. Wolf*, 443 U.S. 595, 602–04 (1979); *see Portland*, 335 B.R. at 850–51, 865–67. Raising a constitutional defense does not entitle a defendant to dismissal of the plaintiff's claims.

**D. The Complaint Does Not Show on Its Face That Counts 4 and 5 Are Extinguished.**

29. A statute of limitations (or repose) is an affirmative defense, and dismissal on that ground is appropriate at the pleading stage "only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) (dismissal on Rule 12(b)(6) claims reversed and remanded as premature).

30. The Parish Defendants' extinguishment arguments under 9 V.S.A. § 2293 (Parish Mot. at 11-15) fail because dismissal is not appropriate unless the complaint demonstrates on its face that the claims are time-barred. *Harris v. City of New York,* 186 F.3d at 250. The Complaint here shows the opposite. The adversary proceeding was commenced within two years of the order for relief, as section 546(a) requires, and under section 544(b) the operative question is whether, as of the Petition Date, at least one actual creditor holding an allowable unsecured claim could have avoided the challenged transfers under Vermont's Uniform Voidable Transactions Act. The Complaint pleads precisely that. (Compl. ¶¶ 61–64.)

31. *Count 5 (constructive fraud).* The Parish Defendants' argument that section 2293(2) contains no discovery period ignores the Additional Transfers made within four years of the Petition Date. The Complaint alleges that the Diocese continued transferring assets to the Parish Trusts for little or no consideration "[w]ithin four years of the Petition Date and as recently as January 2024." (Compl. ¶ 52.) Those transfers clearly fall within any four-year measurement, and a count that is timely as to some transfers cannot be dismissed wholesale. Which transfers occurred when, and in what amounts, is a matter for discovery.

32. *Count 4 (actual fraud).* Section 2293(1) expressly preserves a claim brought within "one year after the transfer or obligation was or could reasonably have been discovered by the claimant." The Complaint alleges that at least one Survivor holding allowable claims as of the Petition Date had no knowledge of the Transfers or Additional Transfers and could not reasonably have discovered them—because he had moved out of state, no longer attended church or received local news or church announcements, and had no access to the Diocese's financial information. Such Survivors had no knowledge of facts that would have caused a reasonable person in their position to inquire. (Compl. ¶ 63.) On a motion to dismiss, those allegations must be accepted as true, and they bring Count 4 squarely within the discovery prong. The issue of when a reasonable person in the claimant's position was put on inquiry notice of his claim is a quintessential question of fact. Even the Parish Defendants acknowledge the Vermont Supreme Court's holding that inquiry notice triggering the statute of limitations regarding a parishioner's negligence claims against a diocese is a question for the jury. (Parish Mot. at 14, citing *Turner v. Roman Catholic Diocese of Burlington*, 186 Vt. 396 (2009)).

33. The Parish Defendants' statute of limitation argument rests entirely on materials outside the pleading: the Boston Globe's 2002 reporting, the 2004 John Jay Report, a 2009

complaint filed in an unrelated state-court action, and a 2019 VTDigger article. None is referenced in, attached to, or integral to the Complaint, and none may be used to contradict the Complaint's allegations on a Rule 12(b)(6) motion. *Chambers*, 282 F.3d at 152–53. Whether any particular Survivor—including Survivors who left Vermont or left the church decades earlier—was on inquiry notice of fraudulent transfers by the Diocese to newly formed Parish Trusts from generalized national reporting about clergy abuse cannot be resolved on this record.

34. Cases cited by the Parish Defendants (Parish Mot. at 13–14), including *Jadallah v. Town of Fairfax*, 207 Vt. 413 (2018), do not hold otherwise even by the Parish Defendants' own account. In *Jadallah,* the plaintiff was on notice of an allegedly fraudulent deed where he signed the deed in favor of the lender, was explicitly told by the lender that the deed had been recorded transferring title out of the plaintiff's name, and the plaintiff's own attorney identified the conveyance in correspondence a month later. *Id.* at 420-21. Nothing comparable appears on the face of this Complaint to demonstrate inquiry notice of the Transfers, including Additional Transfers.

35. The Parish Defendants' suggestion that the 2019 Windows Legislation itself started a one-year clock is likewise without merit and contradicted by their own cited authority. In *Turner v. Roman Catholic Diocese of Burlington*, 186 Vt. at 421-22, the court emphasized that the date of accrual under the statute of limitations and the date of discovery under a retroactive window are separate and determined by different facts. When each Survivor's sexual abuse claim became legally actionable, and what each Survivor knew or should have known and when regarding fraudulent transfers by the Diocese, are individualized factual questions that cannot support dismissal of fraudulent transfer claims at the pleading stage.

## V. THE DIOCESE'S MOTION SHOULD BE DENIED

### A. The Diocese Is a Proper and Necessary Party to the Declaratory Relief Claims.

36. The Diocese asks to be dismissed from Counts 1 through 3 on the theory that the Committee prosecutes claims derivatively "in the Diocese's shoes," such that there is no adversity between them and it offers to "be bound" by whatever the Court decides. (Diocese Mot. ¶11.) Neither argument supports dismissal.

37. Adversity here is a matter of record, not conjecture. It is the Diocese that asserts, in its First Day Declaration, its schedules, and its motions, that the Parish Defendants and High Schools are separate "unincorporated associations" (Compl. ¶¶ 23–24, 77, 83); the Diocese has omitted the Operating Divisions' assets from its Schedules, Statement of Financial Affairs, and monthly operating reports (*id.* ¶ 30); and the Diocese asserts that property titled in its own name is held "in trust" for the Operating Divisions (*id.* ¶ 31). The Complaint's actual controversy allegations (¶¶ 86, 92, 100) name the Diocese precisely because the Diocese is the party pressing the adverse characterization of the estate. *Muskrat v. United States*, 219 U.S. 346 (1911) (Diocese Mot. at ¶ 11) —a case in which no party had adverse interests at all—is inapposite. The Diocese's refusal to pursue claims against the Operating Divisions, its objection to derivative standing, and its pending motion to dismiss the Complaint each confirm that the actual controversy is not limited to other defendants.

38. Nor does derivative standing immunize a debtor from being named. The derivative standing doctrine exists for precisely this circumstance: a debtor-in-possession that is unable or unwilling to pursue claims implicating its own conduct and characterizations. *STN*, 779 F.2d at 904; *Housecraft*, 310 F.3d at 70–71. Committees in diocesan cases have named the debtor as a defendant in materially identical declaratory actions and courts have allowed those actions to

proceed. *See Spokane*, 2006 WL 211792, at *5 (affirming denial of motions to dismiss committee's declaratory action to determine property of the estate); *In re Roman Catholic Bishop of Great Falls*, 584 B.R. 335, 337 n.3, 340 (Bankr. D. Mont. 2018). Indeed, the very passage of *Great Falls* the Diocese quotes acknowledges that the committee's complaint "indeed name[d] the Diocese as a defendant." (Diocese Mot. ¶ 19.) There the diocese was moving *to be* included in the litigation and the Committee had agreed to do so, which was why the court considered the question "academic." *Great Falls*, 584 B.R. at 337 n.3.

39. Professional compensation is subject to this Court's ongoing oversight. It is not a basis for dismissal of the Complaint under Rule 12(b)(6). The Diocese's concern about the cost of funding both sides of an action is mere lip service considering that the Diocese made an affirmative choice to disclaim estate property and force the Committee to pursue this litigation and motion practice while remaining silent even as its own stay was violated, resulting in unnecessary estate expenses.

40. The Declaratory Judgment Act contemplates declarations of the rights of "any interested party," 28 U.S.C. § 2201(a), and no party is more interested than the Debtor. The Diocese's offer to "agree[] to be bound" by the Court's ruling (Diocese Mot. ¶ 17) is no substitute for party status. The declarations sought here will define the Debtor's estate, its disclosure obligations, its plan, and the scope of its discharge. Dismissing the Debtor from the action and substituting a unilateral, revocable litigation promise would invite additional discovery disputes during the case, and years of later disputes about the preclusive scope of the judgment, including as to the Bishop, who acts both as the Diocese's highest official and as trustee of the Parish Trusts. If the Diocese genuinely does not intend to contest the relief sought, it may answer and elect not to oppose, or stipulate to be bound *as a party*; its defense costs are within its own control. What

the Diocese may not do is simply exit the litigation that determines the contours of the estate and what the Diocese owns.

**B. The Diocese Is a Proper Turnover Defendant Under Section 542(a).**

41. The Diocese's argument that only the Parish Trusts are proper turnover defendants misreads both the statute and the Complaint. Section 542(a) reaches "an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease." 11 U.S.C. § 542(a). The Complaint alleges that the *Diocese itself* holds and controls substantial disputed property: the Diocese holds title to the real property on which both High Schools operate (Compl. ¶ 81); the Diocese holds title to the High Schools' bank and investment accounts, including six checking accounts held by "the Diocese dba Rice" (*id.* ¶ 80); and the Diocese continues to hold legal title to real property and accounts used by the Operating Divisions while asserting they are held "in trust" (*id.* ¶ 31). As to all such assets, the Diocese is the "entity . . . in possession," and Count 6 is properly directed to it.

42. The Diocese's contrary argument assumes that Count 6 rests on the avoidance of Transfers to the Parish Trusts. It does not. Count 6 seeks turnover of "all assets held for the benefit of the Operating Divisions and all assets held in the Parish Trusts" (Compl. ¶¶ 115–18). The claim heading expressly identifies Bankruptcy Code sections 541, 542, and 544, and 14A V.S.A. section 505 as the basis for relief against "the Diocese and Bishop, as Parish Trustee." The Committee seeks turnover of estate property from the Diocese under section 541 because the divisions are part of the Debtor and not equitable owners in their own right (Compl. ¶ 115) and separately from the Bishop as Parish Trustee under 14A V.S.A. § 505 because the Parish Trusts are self-settled by and for the benefit of the Diocese (Compl. ¶ 116). The Diocese is properly identified as a defendant to the turnover claims.

43. Finally, the supposed paradox of the Committee suing the entity in whose name it sues was resolved by this Court when it entered the Standing Order after notice and an opportunity to be heard. The Court granted the Committee leave, standing, and authority to prosecute these causes of action on behalf of the Debtor and its estate.

## VI. CONCLUSION

44. The Complaint pleads detailed, well-supported claims going to the single most important question in this case: the scope of the Diocese's bankruptcy estate. The Parish Defendants' threshold objections fail as a matter of law, and the Diocese's request to be excused from litigation that will define its own estate is unsupported by any rule or authority. For the foregoing reasons, the Committee respectfully requests that the Court enter an order (i) denying the Parish Defendants' Motion to Dismiss [Doc. 13] and the Diocese's Motion to Dismiss Complaint [Doc. 11] in their entirety, (ii) directing each defendant to answer the Complaint within fourteen (14) days, and (iii) granting such other relief as is just. In the alternative, if the Court concludes that any count is deficiently pleaded, the Committee requests leave to amend, which should be freely granted.

Dated: September 16, 2026

Respectfully submitted,

LEMERY GREISLER LLC

/s/Paul A. Levine
Paul A. Levine, Esq.
Local Counsel to the Official Committee of Unsecured Creditors
677 Broadway, 8th Floor
Albany, New York 12207
(518) 433-8800
Email: plevine@lemerygreisler.com

– and –

PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang (Admitted Pro Hac Vice)
Brittany M. Michael (Admitted Pro Hac Vice)
Gail S. Greenwood (Admitted Pro Hac Vice)
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Email: jstang@pszjlaw.com
bmichael@pszjlaw.com
ggreenwood@pszjlaw.com

Counsel to the Official Committee of
Unsecured Creditors