*Formatted for Electronic Distribution* *Not for Publication*

Filed & Entered
On Docket
09/27/2026

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF VERMONT

In re:

Roman Catholic Diocese of Burlington, Vermont,

Debtor.

Case No. 24-10205-HZC
Chapter 11

The Official Committee of Unsecured Creditors,

Plaintiff,

vs.

Roman Catholic Diocese of Burlington, Vermont;
Bishop John J. McDermott;
Rice Memorial High School;
Mount St. Joseph High School;
Christ The King - St. Anthony Parish, Burlington;
St. Joseph Co-Cathedral, Burlington;
St. Mark Parish, Burlington;
St. Ambrose Church, Bristol;
St. Mary Church, Cambridge;
Our Lady of Mt. Carmel Church, Charlotte;
Our Lady of Grace Parish, Colchester;
St. Pius X Church, Essex Junction;
Holy Family - St. Lawrence Parish, Essex Junction;
St. Jude Church, Hinesburg;
Holy Cross Parish, Colchester;
St. Ann Parish, Milton;
Our Lady of the Holy Rosary Parish, Richmond;
St. Catherine of Siena, Shelburne;
St. John Vianney Church, South Burlington;
Our Lady of the Lake Parish, South Hero;
St. Thomas Parish, Underhill Center;
St. Peter Parish, Vergennes;
Immaculate Heart of Mary Parish, Williston;
St. Francis Xavier, Winooski;
St. Charles Parish, Bellows Falls;
Our Lady of the Valley Parish, Randolph;
St. Michael Roman Catholic Church, Brattleboro;
Holy Name of Mary Parish, Proctorsville c/o Ludlow;
Our Lady of Mercy, Putney;
Holy Family Parish, Springfield;

Adversary Proc. No. 26-01005

St. Anthony's Parish, White River;
Our Lady Fatima, Wilmington;
St. Francis of Assisi Parish, Windsor;
Our Lady of the Snows, Woodstock;
Christ Our Savior Parish, Manchester Center;
St. John the Baptist Parish, North Bennington;
St. Joachim Parish, Readsboro;
Sacred Heart St. Francis de Sales, Bennington;
St. Monica Parish, Barre;
Our Lady of Perpetual Help, Bradford;
St. Francis of Assisi, Norwich;
Our Lady of Light, South Strafford;
St. Eugene, Wells River;
Mary Queen of All Saints, Hardwick;
St. Augustine Parish, Montpelier;
The Most Holy Name of Jesus Parish, Morrisville;
St. John the Evangelist Parish, Northfield;
Blessed Sacrament Catholic Church, Stowe;
Our Lady of the Snow and St. Patrick's Parish, Waitsfield & Moretown;
St. Andrew Parish, Waterbury;
Most Holy Trinity Parish, Barton;
Mater Dei Parish, Derby Line;
Corpus Christi Parish, St. Johnsbury;
St. André Bessette Parish, Troy;
St. Mary Parish Charitable Trust, Brandon;
St. Bernadette and St. Genevieve Parish, Bridport c/o Middlebury;
St. John the Baptist Parish, Castleton;
Our Lady of Seven Dolors Parish, Fair Haven;
Annunciation of the Blessed Virgin Mary, Ludlow;
Assumption of the Blessed Virgin Mary (St. Mary's) Parish, Middlebury;
St. Frances Cabrini Parish, West Pawlet;
St. Paul Parish, Orwell c/o Castleton;
St. Alphonsus, Pittsford;
St. Raphael Parish, Poultney;
St. Dominic Parish, Proctor;
Christ the King Church, Rutland;
St. Peter, Rutland;
St. Patrick Parish, Wallingford;
St. Bridget Parish, West Rutland;
St. Stanislaus Kostka Parish, West Rutland;
St. John the Baptist, Enosburg;
St. Luke, Fairfax;
St. Patrick Parish, Fairfield;
St. Isidore Parish, Montgomery c/o Richford;
All Saints Parish, Richford;
Our Lady of Lourdes Parish, East Berkshire;
Immaculate Conception Parish, St. Albans;
Ascension Parish, Georgia c/o Fairfax;
St. Anthony Parish, Sheldon Springs;
St. Mary's, Franklin Church of the Nativity - St. Louis Parish, Swanton;
St. Anthony St. George Parish, Fairfield;
Christ the King School, Burlington;
St. Francis Xavier, Winooski;
St. Michael School, Brattleboro;
Sacred Heart School, Bennington;

St. Monica - St. Michael School, Barre;
St. Paul's Catholic School, Barton;
Christ the King School, Rutland;
Good Shepherd Catholic School, St. Johnsbury;
St. Therese Digital Academy, Burlington;
and DOES 1 through 20, being intended to name any
other parishes whose true name and identity is not yet known,

Defendants.

---

Appearances: Steven R. Kinsella, Esq., for the Debtor-in-Possession;
Raymond J. Obuchowski, Esq., local counsel for the Debtor-in-Possession;
Brittany Michael, Esq. for Committee of Unsecured Creditors;
Paul A. Levine, Esq., local counsel for Committee of Unsecured Creditors;
Kaveh S. Shahi, Esq., for Defendants (except the Roman Catholic Diocese of Burlington, Vermont, Mt. St. Joseph High School, and Rice Memorial High School)

**MEMORANDUM OF DECISION DENYING**
**THE ROMAN CATHOLIC DIOCESE OF BURLINGTON, VERMONT'S MOTION TO DISMISS**

The Roman Catholic Diocese of Burlington, Vermont, the debtor-in-possession in this Chapter 11 bankruptcy case and a named defendant in the above-referenced Adversary Proceeding (Debtor or Diocese), moves to dismiss the claims asserted by the Official Committee of Unsecured Creditors (the Committee) against it (the Motion to Dismiss).[1] Debtor contends the claims against it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable hereto by Federal Rule of Bankruptcy Procedure 7012(b). Debtor asserts it is not a proper defendant in the Adversary Proceeding. Debtor reasons that because other Catholic entities hold assets the Committee seeks to determine constitute property of the estate and they are separately represented, Debtor's participation would be superfluous. Debtor argues that if it were to continue to be a party to the Adversary Proceeding, the bankruptcy estate assets will be unnecessarily depleted. Debtor argues that it would agree to be bound by the decision of the Court in the Adversary Proceeding despite no longer being a named party.

---

[1] ECF 11.

Taking the well-pleaded allegations of the Complaint as true and drawing all reasonable inferences in the Committee's favor, the Court finds the Complaint plausibly sets forth claims for relief and denies the Motion to Dismiss in all respects.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 (b)(2)(A), (F), and (H) and 1334(b), and the Amended Order of Reference entered by the U.S. District Court on June 22, 2012. This is a core proceeding according to 28 U.S.C. § 157 (b)(2), over which this Court has constitutional authority to enter a final judgment. Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

## BACKGROUND

### A. The Bankruptcy Filing and Creation of the Bankruptcy Estate

On September 30, 2024, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the Petition Date).[2] As of the Petition Date, Debtor faced numerous lawsuits brought after the Vermont legislature extended the limitations period applicable to civil lawsuits for childhood sexual abuse.[3] Although Debtor successfully settled other childhood sexual abuse lawsuits prior to the Petition Date, the increasing costs of litigation and depleting assets precipitated its bankruptcy filing.[4]

The Official Committee of Unsecured Creditors (the Committee) was duly appointed to represent general unsecured creditors who are survivors (Survivors) of sexual abuse.[5] From the outset of this case, there has been some debate between the Committee and Debtor about whether

---

[2] *In re Roman Catholic Diocese of Burlington, Vermont,* Docket No. 24-10205 (Main Case) ECF 1.

[3] As set forth in the *Affidavit of Bishop John J. McDermott in Support of Initial Pleadings and Pursuant to Local Rule 1007-1* (Main Case ECF 13), Debtor had settled approximately 67 prior cases.

[4] *Id.*

[5] *See* 11 U.S.C. § 1102(a)(1). All statutory references are to Title 11 of the United States Code (the Bankruptcy Code) unless otherwise indicated.

certain property constitutes property of the estate.[6] Debtor contends the Defendants are separate entities as unincorporated associations and assets associated with the Defendants are held in trust, shielded from the claims of Survivors.[7] The Committee claims the Defendants are mere Operating Divisions[8] of Debtor. While each of the Defendants may account separately for individual operations, the ultimate owner of the assets for those operations remains the Debtor.[9] Alternatively, the Committee seeks to avoid and recover Debtor's assets transferred into individual trusts.[10]

On July 28, 2026, this Court issued a Memorandum of Decision and Order Granting Leave, Standing, and Authority to the Official Committee of Unsecured Creditors to Prosecute Certain Causes of Action on Behalf of the Debtor and Its Estate.[11] The Committee then commenced the adversary proceeding currently pending before the Court (the Adversary Proceeding).[12] The Diocese has been included as a defendant in the Adversary Proceeding as the claims directly contest the Diocese's asserted positions as to the Defendants' status as separate entities and that property is held "in trust" for the Defendants.

**B. The Adversary Proceeding Complaint**

In the Complaint commencing the Adversary Proceeding (the Complaint), the Committee seeks the following relief: (1) declaratory relief that the Operating Divisions are not separate legal entities and are operating divisions of Debtor; (2) declaratory relief that all assets of the Operating

---

[6] *See* § 541. *See also,* §1103 (identifying powers and duties of committees).

[7] *See* Affidavit, Main Case ECF 13, ¶¶ 16, 17; *See also,* Complaint.

[8] "Operating Divisions" is defined within the Complaint to include the Defendants, including the Parish Defendants. *See* Complaint, Claim 1.

[9] Complaint, ¶ 31.

[10] *See* Complaint, Claims 4-6.

[11] Main Case ECF 843, 844.

[12] ECF 1.

Divisions constitute property of the estate; (3) declaratory relief that the Parish Trusts are self-settled trusts subject to the claims of Debtor's creditors; (4) avoidance and recovery of intentional fraudulent transfers into the Parish Trusts; (5) avoidance and recovery of constructively fraudulent transfers into the Parish Trusts; and (6) turnover of assets currently in the name of the Parish Trusts.

The following matters are alleged in the Complaint and are taken as true for purposes of the Motion to Dismiss.[13]

**1. Organizational Structure**

In 1896, Debtor incorporated as a corporation sole. Before 2006 and since, public records reflect Debtor is a religious nonprofit corporation.[14] The Defendants are not incorporated. No Parish is incorporated, and no High School is incorporated.[15] Debtor asserts its Parishes are "unincorporated associations", but the Parishes are not registered with the Vermont Secretary of State as required by 11 V.S.A. § 1621.[16] Consequently, the Parishes may not maintain an action or raise a counterclaim, crossclaim or affirmative defense in the State of Vermont pursuant to 11 V.S.A. § 1626.[17]

The Parishes do not prepare independent audited financial statements.[18] They submit internal annual financial reports to Debtor. Debtor identifies its Operating Divisions to third parties, including insurers and the federal government as "part of" the Diocese.[19]

The Operating Divisions are not individually tax exempt. They receive tax exempt status as "subordinate organizations" under the Diocese. Moreover, the Operating Divisions do not file

---

[13] *DiFolco v. MSNBC, LLC,* 622 F.3d 104, 110-111 (2d Cir. 2010).

[14] ¶ 21.

[15] ¶ 22.

[16] ¶ 23.

[17] *Id.*

[18] ¶ 27.

[19] ¶¶ 27-28.

tax returns separately from the Diocese. Rather, the Diocese files a combined Form 990-T (exempt organization return for unrelated business income) that includes non-religious business income generated by the Operating Divisions.[20]

The Parishes have authority over some functions to the extent they are delegated by the Diocese, but their limited Diocese-delegated power is not the same as holding the rights of an independent legal entity.[21] Debtor promulgates extensive policies governing the Parishes' operations.[22] Parishes have "no authority" to "manage, supervise or otherwise control the priests."[23] The Parishes' governance structure is purely consultative.[24]

Despite Debtor not listing the assets of the Operating Divisions on its bankruptcy schedules, Debtor continues to hold legal title to certain real property and accounts used by the Operating Divisions.[25] Debtor identifies the assets as held "in trust" for the benefit of the Operating Divisions.[26]

**2. The Creation of Parish Trusts**

In 2006, Debtor created individual Parish Trusts to hold the real and personal property used by 128 Parishes out of concern that the assets were exposed to the claims of creditors, including the Survivors.[27] The Parish Trusts were created by Debtor, for the purpose of benefiting Debtor, with the intent of insulating assets from the claims of creditors, all while Debtor maintained control

[20] ¶ 29.

[21] ¶ 66.

[22] ¶¶ 66-69.

[23] ¶ 70.

[24] ¶ 76.

[25] ¶¶ 30-31.

[26] ¶ 31.

[27] ¶ 33.

over and the benefit of such assets.[28] Bishop John J. McDermott testified the Parish Trusts were created due to "concern over parish properties being at risk in light of pending lawsuits" and, in part, to protect "those parish properties from the lawsuits."[29] A letter from then-Bishop Salvatore Matano confirms the intent.[30]

The Declaration of Trust for each Parish Trust identifies Debtor as a beneficiary of the Parish Trust.[31] The stated purpose of each Parish Trust is to support and carry out the activities of Debtor alone.[32] The Declaration of Trust does not give the Parish any specific right to use, control, or own the trust assets.[33]

The trustee for each of the Parish trusts is the Bishop (the Parish Trustee) who exercises dominion and control over the trust assets.[34] The Declaration of Trust vests all powers in the Parish Trustee.[35] The Parishes have no independent powers or authority except as approved by the Parish Trustee.[36] The Declaration of Trust is not signed by the Parish and the Parish Trustee may terminate a trust "if the [Parish] Trustee determines that it is necessary or appropriate to suppress the Parish."[37] Upon termination of a Parish Trust, the Parish Trustee (Bishop) has sole discretion regarding disposition or transfer of the assets to another organization "affiliated" with the Diocese.[38]

---

[28] ¶¶ 37-50.

[29] ¶ 34.

[30] ¶ 36.

[31] ¶¶ 37-39; Exhibit A.

[32] ¶ 39.

[33] ¶¶ 37-50.

[34] ¶ 41.

[35] ¶¶ 42-43.

[36] ¶ 44.

[37] ¶¶ 46-48.

[38] ¶ 50.

### 3. Transfer of Assets to Parish Trusts

As settlor of the Parish Trusts, in May 2006 Debtor transferred real property and investment assets valued in the aggregate at hundreds of millions of dollars to the Parish Trusts (the Transfers).[39] Debtor's property insurance schedule as of April 2006 lists each Parish by location and ascribes a "total replacement cost" to the Parish properties of $405 million.[40]

In 2020, then-Bishop Christopher Coyne asked a candidate for the position of Chief Financial Officer of Debtor whether she would be willing to help Debtor shelter assets from survivors in preparation for filing bankruptcy.[41] Within four years of the Petition Date and as recently as January 2024, Debtor continued to transfer diocesan assets to the Parish Trusts for little or no consideration (Additional Transfers).[42] The Deed Into Trust for the Parish Trusts recites Debtor made the transfers to the Parish Trusts "in consideration of One Dollar."[43] The transfers were made for nominal or no consideration.[44] The Deed of Trust was not signed by the named Parish in any capacity.[45]

Each Survivor in this case holds an unsecured claim that arose prior to the Transfers and Additional Transfers that is allowable under Bankruptcy Code section 502.[46] At least one or more Survivor holds an allowable claim as of the Petition Date and had no knowledge of the Transfers or Additional Transfers on the dates of the transactions and could not have reasonably discovered the existence, let alone the fraudulent nature, of the transfers prior to one year before the Petition

---

[39] ¶ 51.

[40] *Id.*

[41] ¶ 52.

[42] *Id.*

[43] ¶55

[44] *Id.*

[45] ¶ 58.

[46] ¶ 62.

Date. Such Survivors had no knowledge because they moved out of state, no longer attended church or received local news or church announcements and simply did not have access to Debtor's financial information.[47] Such Survivors had no knowledge of facts or circumstances that would cause a reasonable person in their position to inquire regarding the existence or the fraudulent nature of the Transfers or Additional Transfers.[48]

## ANALYSIS

### I. Stating a Claim: the Governing Law

#### A. Required Allegations

The Federal Rules of Civil Procedure require that a claim for relief contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[49] A complaint may be dismissed to the extent that it "fail[s] to state a claim upon which relief can be granted.[50] As the United States Supreme Court has held, for a complaint to survive a motion to dismiss under Rule 12(b)(6), the Committee, as plaintiff, must allege "enough facts to state a claim to relief that is plausible on its face."[51] As the Court explained, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[52] In its formulation of the *Twombly-Iqbal* requirements for a statement of claim, the Supreme Court has established the following order to be followed in determining whether the pleading is adequate: "When there are well-pleaded factual allegations, a court should assume their veracity and *then* determine whether they plausibly give rise to an

---

[47] *Id.*

[48] *Id.*

[49] *See* Fed.R.Civ.P. 8(a)(2); Fed.R.Bankr.P. 7008.

[50] *See* Fed.R.Civ.P. 12(b)(6); Fed.R.Bankr.P. 7012(b).

[51] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

[52] *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted).

entitlement to relief."[53] When reviewing the Adversary Complaint, this Court will " 'accept[ ] all factual allegations as true, and draw [ ] all reasonable inferences in the plaintiff's favor.' "[54]

**B. Consideration of Matters Extraneous to the Complaint**

In deciding a Rule 12(b)(6) motion, a court may look to the facts alleged in the complaint, and also to those "[d]ocuments that are attached to the complaint or incorporated in it by reference."[55] Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," thereby rendering the document "integral" to the complaint.[56] However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[57] "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."[58]

## II. Required Parties: the Controlling Standard

Federal Rule of Civil Procedure 19, made applicable hereto by Federal Rule of Bankruptcy Procedure 7019, governs the joinder of required parties. Under Rule 19(a)(1), a person is required if, in that person's absence, the court cannot accord complete relief among existing parties, or the person claims an interest relating to the subject of the action and is so situated that disposing of

---

[53] *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (emphasis supplied).

[54] *DiFolco*, 622 F.3d at 110-11 (alteration in original) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). *See Mills v. Polar Molecular Corp*., 12 F.3d 1170, 1174 (2d Cir. 1993) (accepting as true the complaint's factual allegations and drawing inferences in the pleader's favor). But a court is not required to accept as true those allegations that amount to no more than legal conclusions. *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1950; *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

[55] *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007); *Hayden v. Cty. Of Nassau,* 180 F.3d 42, 54 (2d Cir. 1999) (stating that when considering a Rule 12(b)(6) motion to dismiss, a court may look to the complaint, its exhibits, and documents incorporated by reference).

[56] *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

[57] *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006).

[58] *Id.*

the action in the party's absence may, as a practical matter, impair or impede the person's ability to protect the interest or leave an existing party subject to a substantial risk of incurring multiple or inconsistent obligations.[59]

## III. Committee's Statements of Claims Examined

### A. Counts One through Three: The Declaratory Judgment Claims

The Committee commenced the Adversary Proceeding to establish the extent and scope of Debtor's bankruptcy estate. Debtor maintains the Defendants are legally separate unincorporated associations and that real and personal property held in individual Parish Trusts are not subject to the claims of Debtor's creditors, including the Survivors. On its face, the Complaint alleges each of the Defendants, including those who are not included within the definition of Parish Defendants, constitute Debtor's Operating Divisions such that any of Defendants' assets constitute property of the estate and their activities should be disclosed in accordance with bankruptcy law. The first three claims in the Adversary Complaint seek declaratory relief.

In its First Claim, the Committee seeks declaratory relief regarding the status of Defendants as Debtor's Operating Divisions. In support of its claim, the Complaint asserts an actual, substantial, and justiciable controversy concerning Defendants' status.[60] Debtor has consistently maintained the Parish Defendants are unincorporated associations. The Complaint details Debtor's position as evidenced in the Affidavit of Bishop John J. McDermott in Support of Initial Pleadings, including references to the Parish Defendants existing as unincorporated associations as part of Debtor's civil corporation.[61] The Complaint further details how Debtor's internal documents, tax structure, and control over legal title to real property and accounts support an alternate

[59] *See* Fed.R.Bankr.P. 7019; Fed.R.Civ.P. 19(a)(1).

[60] ¶¶ 84-87.

[61] ¶ 23, n.1.

interpretation. Debtor does not agree with the Committee's characterization of the Parish Defendants being part of Debtor, as "Operating Divisions" or otherwise.

In its Second Claim, the Committee seeks declaratory relief that as Operating Divisions of Debtor, any assets belonging to those Operating Divisions constitute property of Debtor's bankruptcy estate. The Committee asserts the determination of whether those assets constitute estate property pursuant to § 541 is necessary for full administration of the estate and to ensure the confirmation of any plan satisfy the requirements of the Bankruptcy Code.[62]

In its Third Claim, the Committee seeks declaratory relief that the so-called "Parish Trusts" are Self-Settled Trusts such that under Vermont law, the Parish Trusts are subject to the claims of Debtor's creditors.[63]

The Complaint specifically pleads "actual, substantial, and justiciable controvers[ies]" between the Committee and the Diocese regarding the operating division status and ownership of assets and seeks declaratory relief to resolve that dispute.

Debtor contends it is not a necessary, or required, party to the Committee's declaratory judgment claims because other Catholic entities (Defendants) assert ownership of the assets at issue and are separately represented. Debtor further asserts it consents to be bound by the Court's judgment, regardless of whether it is a named party to the Adversary Proceeding. Debtor urges dismissal of the declaratory relief claims against it to avoid estate expense from funding both prosecution and defense.

At the pleading stage, the Complaint alleges a concrete controversy between the Committee and Debtor regarding the legal status of the Parishes and High Schools, the ownership and estate status of assets associated with them, and the characterization of Parish Trusts as self-settled. The

[62] ¶¶ 88-93.

[63] ¶¶ 94-101.

Complaint pleads Debtor has asserted the Operating Divisions are separate under civil law, has not scheduled those assets as estate property, and maintains that certain assets are held "in trust" for those entities. These allegations plausibly frame a justiciable controversy to which the Diocese is central. Whether other Defendants also claim asset interests does not negate the plausibility of claims asserted against the Diocese that seek declarations about the Diocese's own corporate structure, property interests, and trust relationships.

The Diocese's consent to be bound does not render it dispensable for Rule 12(b)(6) purposes. Rule 19 addresses necessary parties for joinder; it is not a vehicle to dismiss a properly pleaded defendant merely because other parties are present or because a defendant offers to accept a judgment.

The Diocese claims that the expense to the estate for it to remain a party supports its dismissal. This Court oversees professional compensation under the Bankruptcy Code. In its *Memorandum of Decision Granting Leave, Standing, and Authority to the Official Committee of Unsecured Creditors to Prosecute Certain Causes of Action on Behalf of the Debtor and its Estate*, this Court observed that the proposed Adversary Proceeding will be expensive and time consuming.[64] However, the Court weighed that expense against the potential benefit to the bankruptcy estate and Debtor's creditors. Debtor has had opportunities and will continue to have opportunities through the Adversary Proceeding, to mitigate the expense to the estate. Anticipated expense does not constitute a ground for dismissal under Rule 12(b)(6).

Accordingly, the Motion to Dismiss the declaratory claims against the Diocese is denied.

---

[64] Main Case ECF 843.

### B. Count Six: The Turnover Claim

The Diocese argues the Committee's turnover claim against it fails as a matter of law because § 542(a) authorizes relief only against an entity "in possession, custody, or control" of estate property, and the Complaint alleges the Parish Trusts hold the property.

The Complaint tethers the turnover claim to alternative theories pleaded in the Complaint.[65] First, the Committee alleges the Parishes and High Schools constitute Operating Divisions of the Diocese and that assets associated with those entities are property of the estate; second, it alleges the Parish Trusts are self-settled trusts of which the Diocese is settlor and beneficiary, subjecting their assets to creditor claims; and, in the alternative, it seeks avoidance and recovery of Transfers and Additional Transfers. Accepting the Committee's allegations as true, the Complaint plausibly alleges some disputed assets are or may be in the Diocese's possession, custody, or control (for example, assets still titled to the Diocese, "Diocese dba" accounts, or assets the Diocese contends it holds "in trust"). The Complaint alleges the Diocese continues to hold legal title to certain real property and accounts used by Operating Divisions and that it exercises control over the Parish Trust assets. Those factual allegations, if proven, could plausibly support relief under § 542(a) as to property the Diocese possesses or controls.

The Complaint also names the Bishop, as Parish Trustee, as a defendant on the turnover claim. The turnover count expressly seeks an order compelling the Bishop, on behalf of the Diocese and in his capacity as Parish Trustee, to deliver assets held for the Operating Divisions and assets held in the Parish Trusts. The Complaint plausibly alleges the Diocese's possession or control of certain property, either directly or through the Bishop. Whether the Diocese lacks

---

[65] The Federal Rules of Civil Procedure expressly permit a party to plead alternative claims and to demand relief in the alternative. Fed.R.Civ.P. 8(a)(3), 8(d)(2)-(3); Fed.R.Bankr.P. 7008.

possession or control over specific assets referenced in the Complaint is a factual issue not suitable for resolution on the Motion to Dismiss.[66]

**IV. Required Party Status**

The Diocese's claim that it is unnecessary or should be dismissed in favor of other Catholic entities implicates Rule 19(a). Under Rule 19(a)(1)(A) (complete relief), the question is whether the Court can accord complete relief among existing parties. On the present pleadings, the Diocese and numerous other entities, including the Bishop as Parish Trustee, are parties. The presence of the Diocese facilitates complete relief because the declaratory claims seek determinations about the Diocese's structure and asset ownership, and the turnover claim seeks relief as to assets the Diocese allegedly possesses or controls. Disposing of those claims in the Diocese's absence would risk incomplete resolution of issues central to the Diocese.

Under Rule 19(a)(1)(B) (impairment/inconsistent obligations), the Diocese has an asserted interest relating to the subject of the action—the characterization of its operating structure, extent of estate property, and trust relationships among the Parishes and High Schools. A judgment in the Diocese's absence could impair its ability to protect that interest or expose existing parties to inconsistent obligations. Conversely, the Diocese's inclusion as a Defendant, rather than as a nonparty that merely consents to be bound, ensures alignment of parties and claims for a comprehensive adjudication. The Court cannot conclude the Diocese is not a proper party to declaratory claims that directly concern the Diocese corporate status, extent of estate property under § 541, and the Diocese's capacities as settlor/beneficiary. Rule 19 does not support dismissal.

---

[66] *See, e.g., Leonard F. v. Israel Discount Bank of New York,* 199 F.3d 99, 107 (2d Cir.1999).

## CONCLUSION

For the reasons set forth above, the Diocese's Motion to Dismiss the Committee's claims asserted against it is denied. The Complaint plausibly alleges declaratory and turnover claims against the Diocese at the pleading stage, and neither Rule 19 nor § 542(a) supports dismissal on the grounds advanced. This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

A separate order will issue.

September 27, 2026
Burlington, Vermont

Heather Z. Cooper
Heather Z. Cooper
United States Bankruptcy Judge