*Formatted for Electronic Distribution* *Not for Publication*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF VERMONT

Filed & Entered
On Docket
09/27/2026

In re:

Roman Catholic Diocese of Burlington, Vermont,

Debtor.

Case No. 24-10205-HZC
Chapter 11

The Official Committee of Unsecured Creditors,

Plaintiff,

vs.

Adversary Proc. No. 26-01005

Roman Catholic Diocese of Burlington, Vermont;
Bishop John J. McDermott;
Rice Memorial High School;
Mount St. Joseph High School;
Christ The King - St. Anthony Parish, Burlington;
St. Joseph Co-Cathedral, Burlington;
St. Mark Parish, Burlington;
St. Ambrose Church, Bristol;
St. Mary Church, Cambridge;
Our Lady of Mt. Carmel Church, Charlotte;
Our Lady of Grace Parish, Colchester;
St. Pius X Church, Essex Junction;
Holy Family - St. Lawrence Parish, Essex Junction;
St. Jude Church, Hinesburg;
Holy Cross Parish, Colchester;
St. Ann Parish, Milton;
Our Lady of the Holy Rosary Parish, Richmond;
St. Catherine of Siena, Shelburne;
St. John Vianney Church, South Burlington;
Our Lady of the Lake Parish, South Hero;
St. Thomas Parish, Underhill Center;
St. Peter Parish, Vergennes;
Immaculate Heart of Mary Parish, Williston;
St. Francis Xavier, Winooski;
St. Charles Parish, Bellows Falls;
Our Lady of the Valley Parish, Randolph;
St. Michael Roman Catholic Church, Brattleboro;
Holy Name of Mary Parish, Proctorsville c/o Ludlow;
Our Lady of Mercy, Putney;
Holy Family Parish, Springfield;
St. Anthony's Parish, White River;
Our Lady Fatima, Wilmington;

St. Francis of Assisi Parish, Windsor;
Our Lady of the Snows, Woodstock;
Christ Our Savior Parish, Manchester Center;
St. John the Baptist Parish, North Bennington;
St. Joachim Parish, Readsboro;
Sacred Heart St. Francis de Sales, Bennington;
St. Monica Parish, Barre;
Our Lady of Perpetual Help, Bradford;
St. Francis of Assisi, Norwich;
Our Lady of Light, South Strafford;
St. Eugene, Wells River;
Mary Queen of All Saints, Hardwick;
St. Augustine Parish, Montpelier;
The Most Holy Name of Jesus Parish, Morrisville;
St. John the Evangelist Parish, Northfield;
Blessed Sacrament Catholic Church, Stowe;
Our Lady of the Snow and St. Patrick's Parish, Waitsfield & Moretown;
St. Andrew Parish, Waterbury;
Most Holy Trinity Parish, Barton;
Mater Dei Parish, Derby Line;
Corpus Christi Parish, St. Johnsbury;
St. André Bessette Parish, Troy;
St. Mary Parish Charitable Trust, Brandon;
St. Bernadette and St. Genevieve Parish, Bridport c/o Middlebury;
St. John the Baptist Parish, Castleton;
Our Lady of Seven Dolors Parish, Fair Haven;
Annunciation of the Blessed Virgin Mary, Ludlow;
Assumption of the Blessed Virgin Mary (St. Mary's) Parish, Middlebury;
St. Frances Cabrini Parish, West Pawlet;
St. Paul Parish, Orwell c/o Castleton;
St. Alphonsus, Pittsford;
St. Raphael Parish, Poultney;
St. Dominic Parish, Proctor;
Christ the King Church, Rutland;
St. Peter, Rutland;
St. Patrick Parish, Wallingford;
St. Bridget Parish, West Rutland;
St. Stanislaus Kostka Parish, West Rutland;
St. John the Baptist, Enosburg;
St. Luke, Fairfax;
St. Patrick Parish, Fairfield;
St. Isidore Parish, Montgomery c/o Richford;
All Saints Parish, Richford;
Our Lady of Lourdes Parish, East Berkshire;
Immaculate Conception Parish, St. Albans;
Ascension Parish, Georgia c/o Fairfax;
St. Anthony Parish, Sheldon Springs;
St. Mary's, Franklin Church of the Nativity - St. Louis Parish, Swanton;
St. Anthony St. George Parish, Fairfield;
Christ the King School, Burlington;
St. Francis Xavier, Winooski;
St. Michael School, Brattleboro;
Sacred Heart School, Bennington;
St. Monica - St. Michael School, Barre;

St. Paul's Catholic School, Barton;
Christ the King School, Rutland;
Good Shepherd Catholic School, St. Johnsbury;
St. Therese Digital Academy, Burlington;
and DOES 1 through 20, being intended to name any
other parishes whose true name and identity is not yet known,

Defendants.

---

Appearances: Steven R. Kinsella, Esq., for the Debtor-in-Possession;
Raymond J. Obuchowski, Esq., local counsel for the Debtor-in-Possession;
Brittany Michael, Esq. for Committee of Unsecured Creditors;
Paul A. Levine, Esq., local counsel for Committee of Unsecured Creditors;
Kaveh S. Shahi, Esq., for Defendants (except the Roman Catholic Diocese of Burlington, Vermont, Mt. St. Joseph High School, and Rice Memorial High School)

## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART PARISH DEFENDANTS' MOTION TO DISMISS

Certain Defendants, comprised of each of the defendants in the above-referenced adversary proceeding (the Adversary Proceeding) other than the Roman Catholic Diocese of Burlington, Vermont (Debtor or Diocese), Mt. St. Joseph High School and Rice Memorial High School, move to dismiss the Adversary Proceeding (the Motion to Dismiss) on multiple grounds.[1] For ease of reference, the moving Defendants shall be referred to collectively as “Parish Defendants”.[2] Those grounds asserted by the Parish Defendants include: (1) the Committee lacks standing to bring the claims asserted; (2) the Committee’s prosecution of the Adversary Proceeding is precluded by a preexisting jurisdictionally proper suit filed by a subset of the Parish Defendants against Survivor claimants directly; and (3) the Parish Defendants intend to raise affirmative defenses which support

---

[1] ECF 13.

[2] The Parish Defendants are necessarily included within the definition of “Operating Divisions” in the Committee’s Complaint.

dismissal. The Committee opposes the Motion to Dismiss,[3] to which the Parish Defendants have replied.[4] The Motion to Dismiss is fully submitted and ripe for determination by the Court.

Taking the well-pleaded allegations of the Complaint as true and drawing all reasonable inferences in the Committee's favor, the Motion to Dismiss is granted in part and denied in part.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (F), and (H) and 1334(b), and the Amended Order of Reference entered by the U.S. District Court on June 22, 2012. This is a core proceeding according to 28 U.S.C. § 157(b)(2), over which this Court has constitutional authority to enter a final judgment. Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

## BACKGROUND

### I. The Bankruptcy Filing and Creation of the Bankruptcy Estate

On September 30, 2024, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the Petition Date).[5] As of the Petition Date, Debtor faced numerous lawsuits brought after the Vermont legislature extended the limitations period applicable to civil lawsuits for childhood sexual abuse.[6] Although Debtor successfully settled other childhood sexual abuse lawsuits prior to the Petition Date, the increasing costs of litigation and depleting assets precipitated its bankruptcy filing.[7]

---

[3] ECF 21.

[4] ECF 24.

[5] *In re Roman Catholic Diocese of Burlington, Vermont,* Docket No. 24-10205 (Main Case) ECF 1.

[6] As set forth in the *Affidavit of Bishop John J. McDermott in Support of Initial Pleadings and Pursuant to Local Rule 1007-1* (Main Case ECF 13), Debtor had settled approximately 67 prior cases.

[7] *Id.*

The Official Committee of Unsecured Creditors (the Committee) was duly appointed to represent general unsecured creditors who are survivors (Survivors) of sexual abuse.[8] From the outset of this case, there has been some debate between the Committee and Debtor about whether certain property constitutes property of the estate.[9] Debtor contends the Defendants are separate entities as unincorporated associations and assets associated with the Defendants are held in trust, shielded from the claims of Survivors.[10] The Committee claims the Defendants are mere Operating Divisions[11] of Debtor. While each of the Defendants may account separately for individual operations, the ultimate owner of the assets for those operations remains the Debtor.[12] Alternatively, the Committee seeks to avoid and recover Debtor's assets transferred into individual trusts.[13]

On July 28, 2026, this Court issued a Memorandum of Decision and Order Granting Leave, Standing, and Authority to the Official Committee of Unsecured Creditors to Prosecute Certain Causes of Action on Behalf of the Debtor and Its Estate.[14] The Committee then commenced the Adversary Proceeding.[15]

## II. The Adversary Proceeding Complaint

In the Complaint commencing the Adversary Proceeding (the Complaint), the Committee

---

[8] *See* 11 U.S.C. § 1102(a)(1). All statutory references are to Title 11 of the United States Code (the Bankruptcy Code) unless otherwise indicated.

[9] *See* § 541. *See also,* §1103 (identifying powers and duties of committees).

[10] *See* Affidavit, Main Case ECF 13, ¶¶ 16, 17; *See also,* Complaint. The term "Defendants" refers to all Defendants in the Adversary Proceeding, including those defendants not otherwise represented by the Parish Defendants.

[11] "Operating Divisions" is defined within the Complaint to include the Defendants, including the Parish Defendants. *See* Complaint, Claim 1.

[12] Complaint, ¶ 31.

[13] *See* Complaint, Claims 4-6.

[14] Main Case ECF 843, 844.

[15] ECF 1.

seeks the following relief: (1) declaratory relief that the Operating Divisions are not separate legal entities and are operating divisions of Debtor; (2) declaratory relief that all assets of the Operating Divisions constitute property of the estate; (3) declaratory relief that the Parish Trusts are self-settled trusts subject to the claims of Debtor's creditors; (4) avoidance and recovery of intentional fraudulent transfers into the Parish Trusts; (5) avoidance and recovery of constructively fraudulent transfers into the Parish Trusts; and (6) turnover of assets currently in the name of the Parish Trusts.

The following matters are alleged in the Complaint and are taken as true for purposes of the Motion to Dismiss.[16]

**A. Organizational Structure**

In 1896, Debtor incorporated as a corporation sole. Before 2006 and since, public records reflect Debtor is a religious nonprofit corporation.[17] The Defendants are not incorporated. No Parish is incorporated, and no High School is incorporated.[18] Debtor asserts its Parishes are "unincorporated associations", but the Parishes are not registered with the Vermont Secretary of State as required by 11 V.S.A. § 1621.[19] Consequently, the Parishes may not maintain an action or raise a counterclaim, crossclaim or affirmative defense in the State of Vermont pursuant to 11 V.S.A. § 1626.[20]

The Parishes do not prepare independent audited financial statements.[21] They submit internal annual financial reports to Debtor. Debtor identifies its Operating Divisions to third

---

[16] *DiFolco v. MSNBC, LLC*, 622 F.3d 104, 110-111 (2d Cir. 2010).

[17] ¶ 21.

[18] ¶ 22.

[19] ¶ 23.

[20] *Id.*

[21] ¶ 27.

parties, including insurers and the federal government as "part of" the Diocese.[22]

The Operating Divisions are not individually tax exempt. They receive tax exempt status as "subordinate organizations" under the Diocese. Moreover, the Operating Divisions do not file tax returns separately from the Diocese. Rather, the Diocese files a combined Form 990-T (exempt organization return for unrelated business income) that includes non-religious business income generated by the Operating Divisions.[23]

The Parishes have authority over some functions to the extent they are delegated by the Diocese, but their limited Diocese-delegated power is not the same as holding the rights of an independent legal entity.[24] Debtor promulgates extensive policies governing the Parishes' operations.[25] Parishes have "no authority" to "manage, supervise or otherwise control the priests."[26] The Parishes' governance structure is purely consultative.[27]

Despite Debtor not listing the assets of the Operating Divisions on its bankruptcy schedules, Debtor continues to hold legal title to certain real property and accounts used by the Operating Divisions.[28] Debtor identifies the assets as held "in trust" for the benefit of the Operating Divisions.[29]

### B. The Creation of Parish Trusts

In 2006, Debtor created individual Parish Trusts to hold the real and personal property used

---

[22] ¶¶ 27-28.

[23] ¶ 29.

[24] ¶ 66.

[25] ¶¶ 66-69.

[26] ¶ 70.

[27] ¶ 76.

[28] ¶¶ 30-31.

[29] ¶ 31.

by 128 Parishes out of concern that the assets were exposed to the claims of creditors, including the Survivors.[30] The Parish Trusts were created by Debtor, for the purpose of benefiting Debtor, with the intent of insulating assets from the claims of creditors, all while Debtor maintained control over and the benefit of such assets.[31] Bishop John J. McDermott testified the Parish Trusts were created due to "concern over parish properties being at risk in light of pending lawsuits" and, in part, to protect "those parish properties from the lawsuits."[32] A letter from then-Bishop Salvatore Matano confirms the intent.[33]

The Declaration of Trust for each Parish Trust identifies Debtor as a beneficiary of the Parish Trust.[34] The stated purpose of each Parish Trust is to support and carry out the activities of Debtor alone.[35] The Declaration of Trust does not give the Parish any specific right to use, control, or own the trust assets.[36]

The trustee for each of the Parish trusts is the Bishop (the Parish Trustee) who exercises dominion and control over the trust assets.[37] The Declaration of Trust vests all powers in the Parish Trustee.[38] The Parishes have no independent powers or authority except as approved by the Parish Trustee.[39] The Declaration of Trust is not signed by the Parish and the Parish Trustee may terminate a trust "if the [Parish] Trustee determines that it is necessary or appropriate to suppress

[30] ¶ 33.

[31] ¶¶ 37-50.

[32] ¶ 34.

[33] ¶ 36.

[34] ¶¶ 37-39; Exhibit A.

[35] ¶ 39.

[36] ¶¶ 37-50.

[37] ¶ 41.

[38] ¶¶ 42-43.

[39] ¶ 44.

the Parish."[40] Upon termination of a Parish Trust, the Parish Trustee (Bishop) has sole discretion regarding disposition or transfer of the assets to another organization "affiliated" with the Diocese.[41]

### C. Transfer of Assets to Parish Trusts

As settlor of the Parish Trusts, in May 2006 Debtor transferred real property and investment assets valued in the aggregate at hundreds of millions of dollars to the Parish Trusts (the Transfers).[42] Debtor's property insurance schedule as of April 2006 lists each Parish by location and ascribes a "total replacement cost" to the Parish properties of $405 million.[43]

In 2020, then-Bishop Christopher Coyne asked a candidate for the position of Chief Financial Officer of Debtor whether she would be willing to help Debtor shelter assets from survivors in preparation for filing bankruptcy.[44] Within four years of the Petition Date and as recently as January 2024, Debtor continued to transfer diocesan assets to the Parish Trusts for little or no consideration (Additional Transfers).[45] The Deed Into Trust for the Parish Trusts recites Debtor made the transfers to the Parish Trusts "in consideration of One Dollar."[46] The transfers were made for nominal or no consideration.[47] The Deed of Trust was not signed by the named Parish in any capacity.[48]

---

[40] ¶¶ 46-48.

[41] ¶50.

[42] ¶ 51.

[43] *Id.*

[44] ¶ 52.

[45] *Id.*

[46] ¶55

[47] *Id.*

[48] ¶ 58.

Each Survivor in this case holds an unsecured claim that arose prior to the Transfers and Additional Transfers that is allowable under Bankruptcy Code section 502.[49] At least one or more Survivor holds an allowable claim as of the Petition Date and had no knowledge of the Transfers or Additional Transfers on the dates of the transactions and could not have reasonably discovered the existence, let alone the fraudulent nature, of the transfers prior to one year before the Petition Date. Such Survivors had no knowledge because they moved out of state, no longer attended church or received local news or church announcements and simply did not have access to Debtor's financial information.[50] Such Survivors had no knowledge of facts or circumstances that would cause a reasonable person in their position to inquire regarding the existence or the fraudulent nature of the Transfers or Additional Transfers.[51]

## ANALYSIS

### I. Stating a Claim – the Governing Law

#### A. Required Allegations

The Federal Rules of Civil Procedure, which apply to the Adversary Proceeding, require that a claim for relief contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[52] A complaint may be dismissed to the extent that it "fail[s] to state a claim upon which relief can be granted.[53] As the United States Supreme Court has held, for a complaint to survive a motion to dismiss under Rule 12(b)(6), the Committee, as plaintiff, must allege "enough facts to state a claim to relief that is plausible on its face."[54] As the Court explained, "[f]actual

---

[49] ¶ 62.

[50] *Id.*

[51] *Id.*

[52] *See* Fed.R.Civ.P. 8(a)(2); Fed.R.Bankr.P. 7008.

[53] *See* Fed.R.Civ.P. 12(b)(6); Fed.R.Bankr.P. 7012(b).

[54] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

allegations must be enough to raise a right to relief above the speculative level."[55] In its formulation of the *Twombly-Iqbal* requirements for a statement of claim, the Supreme Court has established the following order to be followed in determining whether the pleading is adequate: "When there are well-pleaded factual allegations, a court should assume their veracity and *then* determine whether they plausibly give rise to an entitlement to relief."[56] When reviewing the Adversary Complaint, this Court will " 'accept[ ] all factual allegations as true, and draw [ ] all reasonable inferences in the plaintiff's favor.' "[57]

**B. Consideration of Matters Extraneous to the Complaint**

In deciding a Rule 12(b)(6) motion, a court may look to the facts alleged in the complaint, and also to those "[d]ocuments that are attached to the complaint or incorporated in it by reference."[58] Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," thereby rendering the document "integral" to the complaint.[59] However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[60] "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the

[55] *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted).

[56] *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (emphasis supplied).

[57] *DiFolco*, 622 F.3d at 110-11 (alteration in original) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). *See Mills v. Polar Molecular Corp*., 12 F.3d 1170, 1174 (2d Cir. 1993) (accepting as true the complaint's factual allegations and drawing inferences in the pleader's favor). But a court is not required to accept as true those allegations that amount to no more than legal conclusions. *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1950; *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

[58] *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Hayden v. Cty. Of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999) (stating that when considering a Rule 12(b)(6) motion to dismiss, a court may look to the complaint, its exhibits, and documents incorporated by reference).

[59] *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152-53 (2d Cir. 2002)).

[60] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir.2006).

document."[61]

## II. Committee's Statements of Claims Examined

### A. Counts One through Three: The Declaratory Judgment Claims

The Committee commenced the Adversary Proceeding to establish the extent and scope of Debtor's bankruptcy estate. Debtor maintains the Defendants, including the Parish Defendants are legally separate unincorporated associations and that real and personal property held in individual Parish Trusts are not subject to the claims of Debtor's creditors, including the Survivors. On its face, the Complaint alleges each of the Defendants, including those who are not included within the definition of Parish Defendants, constitute Debtor's operating divisions such that any of Defendants' assets constitute property of the estate and their activities should be disclosed in accordance with bankruptcy law. The first three claims in the Adversary Complaint seek declaratory relief.

In its First Claim, the Committee seeks declaratory relief regarding the status of Defendants as Debtor's Operating Divisions. In support of its claim, the Complaint asserts an actual, substantial, and justiciable controversy concerning Defendants' status.[62] Debtor has consistently maintained the Parish Defendants are unincorporated associations. The Complaint details Debtor's position as evidenced in the Affidavit of Bishop John J. McDermott in Support of Initial Pleadings, including references to the Parish Defendants existing as unincorporated associations as part of Debtor's civil corporation.[63] The Complaint further details how Debtor's internal documents, tax structure, and control over legal title to real property and accounts support an alternate

---

[61] *Id.*

[62] ¶¶ 84-87.

[63] ¶ 23, n.1.

interpretation. Debtor does not agree with the Committee's characterization of the Parish Defendants being part of Debtor, as "Operating Divisions" or otherwise.

In its Second Claim, the Committee seeks declaratory relief that as Operating Divisions of Debtor, any assets belonging to those Operating Divisions constitute property of Debtor's bankruptcy estate. The Committee asserts the determination of whether those assets constitute estate property pursuant to § 541 is necessary for full administration of the estate and to ensure the confirmation of any plan satisfy the requirements of the Bankruptcy Code.[64]

In its Third Claim, the Committee seeks declaratory relief that the so-called "Parish Trusts" are Self-Settled Trusts such that under Vermont law, the Parish Trusts are subject to the claims of Debtor's creditors.[65]

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[66] When evaluating whether an actual controversy exists, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[67]

In the Motion to Dismiss, the Parish Defendants assert the Committee fails to assert sufficient facts to demonstrate Article III standing as it relates to the Parish Defendants. In support of this position, the Parish Defendants pluck three paragraphs out of the requests for declaratory

---

[64] ¶¶ 88-93.

[65] ¶¶ 94-101.

[66] 28 U.S.C.A. § 2201(a).

[67] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764, 771 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*,312 U.S. 270, 273 (1941)).

relief counts, asserting they fail to assert a justiciable case or controversy as to the Parish Defendants, as Operating Divisions of Debtor. Specifically, the Parish Defendants claim the following paragraphs only assert a justiciable controversy "between the Committee and the Diocese" rather than with the Parish Defendants:

> 86. An actual, substantial, and *justiciable controversy exists between the Committee and the Diocese* concerning the status of the Operating Divisions and whether these entities are unincorporated associations as the Diocese contends or, in fact, are merely unincorporated operating divisions of the Diocese that use diocesan property that is subject to the claims of the Diocese's creditors, including the Survivors.
>
> 92. An actual, substantial, and *justiciable controversy exists between the Committee and the Diocese* concerning the ownership of real and personal property allegedly held by the Operating Divisions as unincorporated associations or in trust for their benefit. The Committee contends that assets of the Diocese held for the alleged benefit of the Operating Divisions are, in fact, owned by the Diocese and are property of the estate.
>
> 100. An actual, substantial, and *justiciable controversy exists between the Committee and the Diocese* regarding the validity of the Parish Trusts, the effectiveness of any purported transfer of assets to those trusts, and whether those assets constitute property of the bankruptcy estate available to satisfy the claims of the Survivors.

[Emphasis added].

The Court disagrees. The pleading, read as a whole and in context, alleges a concrete controversy concerning the civil status of the Defendants and the legal ownership of assets they use, in which the Parish Defendants are named as parties whose asserted separateness and property claims are put at issue. Each of these paragraphs fall within separate claims for relief which specifically have in the heading, "**Against All Defendants**" and follow an introductory paragraph in which "The Committee re-alleges each of the allegations contained in each preceding paragraph

of this Complaint as though fully set forth herein."[68] The Committee asserts this context provides sufficient notice to the Parish Defendants and when read within the overall framework of the Complaint, its claims are legally feasible.[69] The Court agrees.

### 1. Count One: Operating Division Status

When reviewing a motion to dismiss, the Court looks to the allegations in the Complaint, read together, assessing its overall legal feasibility.[70] When the Complaint allegations are read together, it plausibly alleges the Parishes and High Schools are Operating Divisions rather than separate civil entities by alleging: Debtor historically held title to parish and school property; Debtor's own public financials identify schools as "operating divisions"; Parishes and High Schools are unincorporated and not registered as associations; operations, governance, and finances are controlled by diocesan policies and the Bishop; and bank and real property titles are in the Diocese's name or in trusts controlled by the Bishop. The Complaint further alleges operational control resides centrally with the Diocese and the Bishop, including payroll, insurance, financial reporting, and approvals. These factual allegations, accepted as true, plausibly support a declaration that the Defendants are operating divisions and that a live controversy exists with the Parish Defendants concerning their legal status vis-à-vis the estate.

The Parish Defendants assert *In re Goebel,* 184 F.4th 59 (2d Cir. 2026), supports their position on Article III standing doctrines and their reading of the Complaint. The Complaint at issue in *In re Goebel* sought a declaratory judgment on an event that had yet to take place. In that case, the chapter 7 debtor sought declaratory relief on an anticipated tax liability and future conduct by the Internal Revenue Service. In short, her injury had not yet been determined. It is unclear

[68] ¶¶ 84; 88; 94.

[69] ECF 21, p. 7, ¶ 17.

[70] *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

what future events the Parish Defendants claim have yet to take place or how the Adversary Proceeding presents a hypothetical or abstract dispute.

Article III standing doctrines are satisfied at the pleading stage: the Committee alleges a present injury to the estate arising from the uncertainty and competing assertions over the status of the Defendants and their related assets, traceable to Defendants' positions and conduct, and addressable by declaratory relief. Debtor has not listed any of the assets of its Operating Divisions on its Schedules of Assets and Liabilities or Statement of Financial Affairs filed with the Bankruptcy Court as property of the estate and has not reported the activities of its Operating Divisions on monthly operating reports with the Bankruptcy Court. Consequently, the Committee alleges approximately $405 million in assets have been shielded from the bankruptcy process that should be available to Debtor's creditors, including the Survivors. While the ultimate value may prove to be different, the allegations in the Complaint are neither hypothetical nor abstract. The bankruptcy estate cannot be fully administered, and a plan cannot be formulated without the resolution of the relationship and relative rights between Debtor and the Defendants.[71]

**2. Count Two: Assets of Operating Divisions are Estate Property**

For the same reasons identified above, Count Two of the Complaint states a plausible claim. The Complaint alleges that the Diocese did not list operating-division assets on its schedules or monthly operating reports, while continuing to hold legal title to certain real property and accounts used by operating divisions but characterizing them as held "in trust." The Complaint alleges the Diocese has not disclosed operating-division assets as estate property and asserts that assets in the Diocese's name or in operating divisions or parish trusts are, in substance, estate property under § 541. Given those allegations, an Article III case or controversy exists with

[71] ¶¶ 6; 30.

Defendants who claim separateness or beneficial ownership contrary to the Committee's position, including the Parish Defendants. Taking the pleaded facts as true, and applying reasonable inferences, Count Two is plausible and not subject to dismissal at this stage.

**3. Count Three: Parish Trusts are Self-Settled and Estate Property**

The Parish Defendants maintain the Committee's controversy is limited to Debtor. The Complaint alleges more. The Complaint attaches and quotes the standard Declaration of Trust form to allege the Diocese is both settlor and beneficiary, that the Bishop serves as Parish Trustee with broad powers, and the Parish Defendants and their respective parishioners have no specific rights in trust assets. The Complaint alleges each Parish Trust was created and funded by the Diocese, expressly identifies the Diocese as a beneficiary, vests control in the Bishop as trustee with authority to manage, amend, and terminate trusts, and recites nominal consideration in deeds into trust. Those allegations plausibly support the requested declaration under applicable law that self-settled trust assets are subject to the settlor-beneficiary's creditors. At minimum, these facts present a live dispute with the Parish Trustee and the Parish Defendants over the characterization of and estate inclusion of trust assets. Rule 12(b)(6) dismissal is unwarranted.

The Complaint specifically pleads "actual, substantial, and justiciable controvers[ies]" regarding the operating division status and ownership of assets and seeks declaratory relief to resolve that dispute. Accordingly, dismissal of Counts 1-3 of the Complaint under Rule 12(b)(6) is not warranted.

**B. Counts Four and Five: The Fraudulent Conveyance Claims**

The Parish Defendants move to dismiss Claims Four and Five on the following bases: (1) Bishop McDermott, in his capacity as Parish Trustee, was not the Bishop of Debtor at the time of alleged transfers and such, the claims against him fail as a matter of law; (2) the statute of

limitations precludes the claims of constructive fraud because the Vermont statute does not contemplate a discovery rule; and (3) the statute of limitations preclude the claims of actual fraud because, while the Vermont statute contemplates a discovery rule, the Survivors were put on inquiry notice long ago.

Within the Complaint's allegations, the Committee defines two sets of transfers: the Transfers at the time of the creation of the Parish Trusts (2006)[72] and Additional Transfers, which occurred within four years of the Petition Date and as recently as January 2024.[73] The Complaint alleges the Transfers and Additional Transfers are subject to avoidance under Counts Four and Five.

**1. The Bishop as Parish Trustee**

The Parish Defendants[74] claim the fraudulent-transfer claims fail against Bishop McDermott, in his capacity as Parish Trustee, for lack of causation because he was not Debtor's Bishop at that time, so he did not make the Transfers. The Complaint alleges the Parish Trusts are initial transferees and that the Bishop, as Parish Trustee, controls the trust assets, executed trust documents, and is the proper party from whom recovery may be sought as trustee of the initial transferee under the avoidance and recovery framework. The Complaint alleges each Parish Trust is an initial transferee of the Transfers and Additional Transfers, the Bishop serves as trustee with dominion and control over trust assets, and the Deeds Into Trust identify the Bishop as grantee in his trustee capacity. Those allegations adequately plead traceability and redressability as to the Parish Trustee for purposes of avoidance and recovery remedies, and any factual disputes about roles and timing are not for resolution at the Rule 12(b)(6) stage.

---

[72] ¶ 51.

[73] ¶ 52.

[74] The "Parish Defendants" includes the Bishop in his capacity as Parish Trustee.

**2. Statute of Limitations**

The Parish Defendants contend Count Five (constructive fraud) as extinguished under 9 V.S.A. § 2293(2) because that provision has no discovery rule and Count Four (actual fraud) under 9 V.S.A. § 2293(1), arguing inquiry notice occurred long ago.[75]

As to Count Five, the Parish Defendants argue 9 V.S.A. § 2293(2), which does not have a discovery rule provision, precludes the Committee's claims because the Transfers occurred more than four years prior to the Petition Date.[76] The Vermont statute is incorporated by reference in section 544(b) of the Code, "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable *under applicable law* by a creditor holding an unsecured claim..." Under this section, a trustee is permitted to step into the shows of an unsecured creditor and utilize applicable state law avoidance statutes to recover fraudulently transferred property.[77]

Although application of a statute of limitations is an affirmative defense,[78] it may be raised "in a pre-answer Rule 12(b)(6) motion of the defense appears on the face of the complaint."[79] Pursuant to 9 V.S.A. § 2289(a), a fraudulent conveyance claim based upon constructive fraud must

[75] ECF 13, pp. 11-15.

[76] ECF 13, pp. 11-12.

[77] *Universal Church v. Geltzer,* 463 F.3d 218, 222 n.1 (2d Cir.2006) ("[T]he Bankruptcy Code allows the trustee to step into the shoes of a creditor under state law and avoid any transfers such a creditor could have avoided.")

[78] *Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011).

[79] *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 354 (D. Vt. 2010)("[U]nless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development.")(quoting *Foss v. Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005)).

be brought not later than four years after the transfer was made.[80] The Transfers, as defined and alleged to have occurred upon creation of the Parish Trusts in 2006 are outside the time limitation imposed by the Vermont statute for a constructive fraud claim. Accordingly, dismissal of the Claim Five only as it relates to the Transfers, as defined, is appropriate under Rule 12(b)(6).

The Complaint, however, also alleges "Additional Transfers" of diocesan assets to the parish trusts "within four years of the Petition Date and as recently as January 2024," for little or no consideration. The Complaint alleges that within four years of the Petition Date, and as recently as January 2024, Debtor continued to transfer its assets to the Parish Trusts for little or no consideration to shield assets from Survivors. Accepting those allegations as true, at least some challenged transfers fall within 9 V.S.A. § 2293(2)'s four-year period, rendering dismissal of Count Five in its entirety inappropriate. To the extent the Parish Defendants dispute whether any such Additional Transfers occurred, or when, their challenge raises factual issues beyond the pleadings.

As to Count Four under 9 V.S.A. § 2293(1), the Complaint pleads that at least one or more Survivors with allowable claims as of the Petition Date lacked knowledge of the Transfers and Additional Transfers and could not reasonably have discovered them until within one year before the Petition Date, explaining the absence of access ties to Debtor and Debtor's financial information. The Complaint alleges that one or more Survivors with allowable claims did not know and could not reasonably have discovered the existence or fraudulent nature of the Transfers or Additional Transfers prior to one year before the Petition Date. Those allegations suffice at the pleading stage to invoke 9 V.S.A. § 2293(1)'s discovery component and to forestall dismissal. The

---

[80] *Astra USA, Inc. v. Bildman*, 375 F. App'x 129, 133 (2d Cir. 2010) (applying Vermont law and holding that fraudulent transfer claims brought in October 2007 pursuant to 9 V.S.A. § 2289(a) were time barred because the transfer occurred in July 2002).

Parish Defendants' contrary position rests on disputed factual assertions about what creditors should have discovered and when, including references to media coverage and unrelated litigation.[81] Such position is misplaced and not resolvable on a motion to dismiss based solely on the pleadings. A ruling on a motion to dismiss under Rule 12(b)(6) is not an occasion for the Court to make findings of fact.[82]

The Parish Defendants also invoke "inquiry notice" in an attempt to time-bar Count Four, pointing to asserted public information and other lawsuits.[83] In so doing, the Parish Defendants again rely on materials and inferences outside the Complaint and ask the Court to draw defense-favorable conclusions on disputed chronology and Survivors' knowledge. In support of their position, the Parish Defendants request this Court take judicial notice not just of the existence of pleadings filed in State Court but also to assume the veracity of the allegations contained within the pleading. Such request exceeds the parameters for judicial notice. At this stage, the Court cannot resolve such fact issues or weigh competing inferences. The pleaded facts plausibly state timely claims under both theories.

**C. Count Six: The Turnover Claims**

The Parish Defendants argue the Committee's turnover claim is premature because estate ownership has not yet been adjudicated, and that seeking turnover now would constitute an advisory opinion.[84] This argument ignores the Complaint pleads two alternative bases for estate ownership: first, that Operating Division and Parish Trust assets are property of the estate under § 541 based on the entities' status and trust characterization; and second, that such assets are

[81] ECF 13, pp. 14-15.

[82] *See, e.g., Leonard F. v. Israel Discount Bank of New York,* 199 F.3d 99, 107 (2d Cir.1999).

[83] ECF 13, pp. 12-15.

[84] ECF 13, pp. 8-9.

recoverable following avoidance. The Complaint seeks turnover under § 542 predicated on allegations that Operating Division and Parish Trust assets are property of the estate under § 541, including because the Parish Trusts are self-settled and because Debtor retains title or control; it also seeks avoidance and recovery of transfers to the Parish Trusts. Courts commonly allow a turnover count to proceed in the alternative alongside declaratory and avoidance counts at the pleading stage.[85] Whether turnover ultimately lies may depend on adjudications to come, but the claim is adequately pleaded and not subject to dismissal as unripe where the Complaint plausibly alleges present estate ownership under § 541. Any contention that turnover relief cannot precede avoidance is addressed by the Complaint's alternative theories and does not warrant dismissal now.

## III. "First to File," Non-Consent, and Article III Adjudication Arguments

The Parish Defendants invoke a "first-to-file" rule, arguing the Adversary Proceeding must yield to a separate Federal Declaratory Action and assert nonconsent to bankruptcy-court adjudication of constitutional defenses the Parish Defendants may raise in the Adversary Proceeding.[86] The Parish Defendants' arguments do not support dismissal under Rule 12(b)(6) of the Committee's well-pleaded claims. Rather, they raise procedural and forum issues potentially bearing on case management or the scope of final adjudication, not on the sufficiency of the Complaint's factual allegations.[87] On this Rule 12(b)(6) record, the Court declines to dismiss on

---

[85] The Federal Rules of Civil Procedure expressly permit a party to plead alternative claims and to demand relief in the alternative. Fed.R.Civ.P. 8(a)(3), 8(d)(2)-(3); Fed.R.Bankr.P. 7008.

[86] The Federal Declaratory Action was filed on July 21, 2026, by a small subset of the Parish Defendants, only seven parishes as plaintiff in that action, against a small subset of individual Survivors, only six Survivors were personally named. This Court previously ruled the commencement of the Federal Declaratory Action, which seeks, among other things, to halt the bankruptcy process as a whole, constituted a violation of the automatic stay and consequently, is void. (Main Case ECF 882). That ruling, while currently the subject of an appeal (Main Case ECF 883), remains operative until otherwise determined. In support of the Motion to Dismiss, the Parish Defendants requested this Court take judicial notice of the Federal Declaratory Action Complaint as well as a copy of a State Court complaint filed in *Borden v. Roman Catholic Diocese of Burlington, et al,* Docket No. S1527-09CnC [ECF 15].

[87] *See* Fed.R.Bankr.P. 5011(c).

those grounds. Any Article III/nonconsent issues, to the extent implicated, can be addressed through appropriate procedures without extinguishing the Committee's claims at the pleading stage.[88]

## CONCLUSION

For the foregoing reasons, the Parish Defendants' Rule 12(b)(6) motion to dismiss is granted as to Claim Five only to the extent it refers to "Transfers." The remainder of the Motion to Dismiss is denied. The Parish Defendants shall answer the Complaint within the time permitted by the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure. This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

A separate order will issue.

Heather Z. Cooper

September 27, 2026
Burlington, Vermont

Heather Z. Cooper
United States Bankruptcy Judge

[88] *See* 28 U.S.C. § 157(c)(1); *Wellness Intern. Network, Ltd. v. Sharif,* 575 U.S. 665, 671, 135 S.Ct. 1932, 1940 (2015); *Executive Benefits Insurance Agency v. Arkison,* 573 U.S. 25, 34-36 (2014); Fed.R.Bankr.P. 5004.